CITY COUNCIL OF CHARLESTON v. RYAN.

1. Findings of fact by the master, concurred in by the Circuit judge, approved.
2. If the satisfaction of a mortgage be fraudulently accomplished, nevertheless the rights of a subsequent purchaser for valuable consideration without notice of such fraud, will be secure against the mortgage.
3. Where the mortgagee endorsed his name in blank, under his seal, on the back of the mortgage, and then parted with its possession, and a satisfaction was thereafter written above his signature and duly entered of record, he must bear the consequences of the act made possible through his negligence, and an innocent subsequent purchaser will be protected.
4. Where the right to jury trial exists, it is waived if all issues of law and fact be referred by consent to the master.
5. The satisfaction of a mortgage does not require two subscribing witnesses.

Before KERSHAW, J., Charleston, April, 1884.

Master Hanckel thus states the case:

· The present case grows out of a previous case. In that case the City Council of Charleston filed their complaint against

Mary A. Ryan, one of the defendants in the present case, to foreclose a mortgage of the property described in the pleadings herein, executed by her to secure her bond to the City Council of Charleston, conditioned for the payment of fifteen hundred dollars; and under proceedings duly had therein, the mortgaged property was ordered to be sold; and at the sale the defendant, Dorothea Blohme, became the purchaser at the price of twenty-five hundred dollars. She refused to comply with the terms of sale. A rule to show cause why she should not comply was served upon her. In her return to this rule she showed for cause, that she was about to comply with the terms of the sale to her when she was informed that a certain mortgage so sold to her, hereinafter more fully described, had been fraudulently satisfied, upon the record of it.

The rule and the return thereto came on to be heard before the honorable B. C. Pressley, presiding judge, and by an order made by him and dated April 22, 1880, it was ordered, that the rule be discharged; and it was further ordered, that Mrs. Dorothea Blohme, the purchaser in that action, be discharged from her said purchase, unless proceedings be instituted with proper parties to test the validity of the title. From this order an appeal was taken by the City Council of Charleston to the Supreme Court of this state, and after being there heard, by a decree, filed April 11, 1881, the decree of the Circuit Court was affirmed. 15 *S. C.*, 124.

The present action is therefore now instituted in pursuance of the requirements of that decree to test the validity of the title to the property in question.

I find the case to be as follows: William B. Ryan, now deceased, being in his life-time seized and possessed of a certain house and lot on the west side of Pitt street, in the city of Charleston, and fully described in the complaint in this case, executed a mortgage of that property, dated December 17, 1866, to Patrick H. Ryan, trustee of Thomas J. Ryan, who was a minor, and the son of the mortgagor, W. B. Ryan, to secure a bond of even date therewith, and conditioned for the payment of the sum of $3,500, and this mortgage was duly recorded in the office of the register of mesne conveyance for Charleston County, on January 30, 1869.

Not long after the execution of that mortgage the trustee, Patrick H. Ryan, died, and thereupon the *cestui que trust*, Thomas J. Ryan, by his father and next friend, W. B. Ryan, filed his petition in the Court of Equity for Charleston District (now county), praying that Thomas E. Ryan be appointed trustee, and for other relief therein stated. This petition was referred to Master Gray, and on May 26, 1868, he reported, among other things, as follows : "I find also that Patrick H. Ryan, the trustee, departed this life as stated in the petition. From the evidence of Wm. B. Ryan taken, he is in a destitute condition since the war, all his resources having been swept away in that great overthrow ; and he is unable to maintain and educate his son. I therefore respectfully recommend the appointment of Thomas E. Ryan as trustee, under the said bond and mortgage, and recommend at the same time that power be given the newly appointed trustee to pledge the aforesaid mortgage for the purpose of borrowing the sum of twelve hundred dollars for his maintenance and education."

Thereupon, on May 26, 1868, the Hon. H. D. Lesesne, chancellor, ordered and decreed as follows : "On the report of Master Gray in this case, and on motion of M. P. O'Connor, solicitor *pro pet.*, it is ordered, that Thomas E. Ryan be substituted as trustee for Thomas J. Ryan, in the place and stead of Patrick H. Ryan, deceased ; and that upon his giving bond with surety, faithfully to account for the estate of the minor that may come into his hands, the bond and mortgage described in the petition be delivered to him. It is further ordered, that the said Thomas E. Ryan, substituted trustee, have leave to pledge said bond and mortgage as a collateral security for any loan or advance of money to the amount of $1,200, that may be necessary to provide for the maintenance and education of said minor, Thomas J. Ryan."

Subsequently and before the filing of the complaint in the present case, the infant *cestui que trust*, Thomas J. Ryan, died, under age, and the defendant, Mary A. Ryan, has administered upon his estate ; and the other defendants, William B. Ryan and Mary L. Ryan, now claim as his distributees under the statute.

I also find as a fact that upon the said bond and mortgage

being delivered to him, Thomas E. Ryan, the substituted trustee, signed his name and affixed his seal on the back of the same, leaving a blank space above such signature and seal; that this was done in the presence of a witness, to wit, M. P. O'Connor, and that the bond and mortgage, with the blank signature and seal, so endorsed thereon, was delivered by the trustee to the mortgagor, William B. Ryan, for the purpose of enabling him to pledge the same as collateral security in borrowing money thereon. I find these to be facts, because the trustee, Thomas E. Ryan, in his testimony in this case, expressly states that he signed a paper of some kind in blank, for the purpose of enabling the mortgagor, W. B. Ryan, to pledge the bond and mortgage, to raise money for the maintenance and education of the *cestui que trust*, his son. The trustee does indeed testify that the paper so signed by him in blank was not on any part of the mortgage, but was a distinct and separate paper. But the usual and very frequent method of pledging bonds and mortgages as collateral security is to place such a blank signature and seal upon the back, in the presence of a witness or witnesses. From a receipt also, signed by Z. B. Oakes, which is evidence in this case, it appears that this very bond and mortgage was lodged with him as a collateral. It could not have been so pledged, unless some such signature and sealing had been endorsed upon it.

In the satisfaction also which is recorded across the face of the record of mortgage, and which has given rise to this litigation, it is distinctly stated that "the bond for which this mortgage was made as security having been paid," &c. The register of mesne conveyance must therefore have found the signature and seal of the trustee attached to this mortgage, that being the mortgage then in his hands, from some part of which he was recording the satisfaction he found upon it. The faith and credit due to the public records requires that this be assumed as a fact. In addition to this is to be considered that Mr. M. P. O'Connor, the witness and a member of the bar in good standing, upon oath deposes that he witnessed the execution of the above written satisfaction.

And it is to be noticed further that the trustee also testifies that hearing of the satisfaction, he consulted Mr. R. S. Duryea,

a prominent member of the bar, who took him (to the court house, he says, but evidently to the fire-proof building, where the records are kept) and showed him some paper there pasted across the record of the mortgage. The testimony is obscure, but what was shown him was evidently the record of the satisfaction he had heard of and was inquiring about. And yet he took no steps to question the satisfaction until Mr. O'Connor and Mr. Duryea were both dead, and did nothing until after the defendant, Dorothea Blohme, had purchased the property at the sale under the foreclosure of Mrs. Mary A. Ryan's mortgage to the City Council; and then only made an affidavit that he had never signed the satisfaction; and never instituted any proceedings to set aside the satisfaction he so repudiated. It is not unreasonable, therefore, to suppose that at the time of his consultation with Mr. Duryea, he was convinced that the record of satisfaction across the record of the mortgage was the record of a paper, to which his genuine seal and signature was attached, even if the writing over it was not the writing he intended should be there written.

I am therefore satisfied that the trustee, Thomas E. Ryan, is entirely mistaken in his testimony, that the blank paper he signed and delivered to W. B. Ryan, the mortgagor, formed no part of the mortgage deed, and was not in fact on the back of it. On the contrary, I find as a fact that the substituted trustee, Thomas E. Ryan, did sign his name as trustee of Thomas J. Ryan, and affix his seal thereto, on some part of the mortgage in question, leaving a blank space over such signature and seal; and that this was done in the presence of M. P. O'Connor as a witness, and that the copy of that signature and seal which appears in the record of the satisfaction of that mortgage, afterwards to be considered, is the copy of the trustee's genuine signature and seal. I also find as a fact that this bond and this mortgage, with the blank signature and seal of the trustee so attached to it, was delivered by him to the mortgagor, W. B. Ryan, and were in the possession of the latter at the time when the satisfaction next to be mentioned and considered was written above them.

There is, indeed, in evidence the receipt of one Z. B. Oakes, which shows that the bond and mortgage were in his possession

at one time as collateral security for money advanced upon it. But this receipt itself states that they were delivered to Oakes by the mortgagor, W. B. Ryan, to whom it had been delivered by the trustee; and they must have been again returned to the possession of the mortgagor, who had delivered them to Oakes; because if it had remained as a collateral in the possession of Oakes, he would not have allowed a satisfaction to be endorsed upon the mortgage, but would have required an assignment to himself to be written instead; and Oakes has made no claim to such an assignment. It is evident that this loan being paid, he naturally returned the bond and mortgage to W. B. Ryan from whom he had received them.

I also find as a fact that on the blank space above the signature and seal of the trustee on the mortgage there was on September 1, 1870, written by some one (in the view I shall take of the case it is not necessary to decide by whom) a full satisfaction of the mortgage in the following words, to wit:

"STATE OF SOUTH CAROLINA.

"The bond for which this mortgage was made as security having been paid, I declare the within mortgage fully satisfied and discharged.

"Witness my hand and seal this first of September, 1870.

"THOMAS E. RYAN, [L. S.]

"Trustee for Thos. J. Ryan.

"In the presence of

"M. P. O'CONNOR."

And that this satisfaction was proved for record by an affidavit of the witness, M. P. O'Connor, as follows, to wit:

"STATE OF SOUTH CAROLINA.

"Personally appeared, M. P. O'Connor, who deposeth that he saw Thomas E. Ryan sign and seal the foregoing satisfaction, and witnessed the execution thereof.      M. P. O'CONNOR.

"Sworn to before me this 2d September, 1870.

"A. P. SAMPSON, Notary Public."

I also find as a fact that on or about September 1, 1870, Mary A. Ryan, the defendant in the original case of foreclosure and one of the defendants in the case at bar, being seized and possessed of the fee in the house and lot on Pitt street, described in

the complaint, under a deed of conveyance from E. W. M. Mackey, sheriff of Charleston County, dated June 6, 1870, contracted with the City Council of Charleston to borrow what are known as fire loan bonds, to the amount of $1,500, and that in order to secure the payment of this loan the said Mary A. Ryan executed her bond conditioned for the payment to the City Council of Charleston of the sum of fifteen hundred dollars, in fifteen equal successive annual instalments, with interest at the rate of seven per cent. per annum, payable quarterly in advance.

That, in order to secure the payment of the said bond, the said Mary A. Ryan executed a mortgage, dated September 1, 1870, of the house and lot on Pitt street described in the complaint, and of which she was seized and possessed in fee as above stated. And that the mortgage so executed and dated September 1, 1870, was not proved for record and not recorded until September 9, 1870, at which last date M. P. O'Connor, the attorney of Mrs. Mary A. Ryan, the mortgagor, gave his receipt for an instalment of $1,000 of the said fire loan bonds, the second instalment of $500 being received by him on September 14, 1870.

I also find as a fact that the City Council of Charleston, at the time of their making their loan to the defendant, Mary A. Ryan, did not know, and had no good reason to suspect, that the satisfaction recorded across the face of the record of the mortgage of W. B. Ryan to Patrick H. Ryan, the original trustee of T. J. Ryan, above mentioned, was not written at the time of the signing and sealing of the same by the substituted trustee, Thos. E. Ryan; and that they did not know, and had no good reason to suspect, that such signature and seal had not been originally signed and affixed with a blank space above it; and that they did not know, and had no good reason to suspect, that the satisfaction written above the signature and seal was not such a writing as Thos. E. Ryan, the substituted trustee, intended should be there written. I find these as facts, because the burden of the proof of the contrary was on the substituted trustee, and he has produced no evidence whatever to prove the contrary.

In this connection it has been argued before me, that although the City Council of Charleston might not have actually known,

yet they had sufficient reason to suspect that something was wrong, and were reasonably put upon inquiry by reason of the fact that in the proceedings in which Thomas E. Ryan was appointed substituted trustee, and which formed a part of the chain of title, it appeared that the mortgagor, W. B. Ryan, was in so destitute a condition that it was necessary to permit the substituted trustee to pledge the mortgage which constituted the trust estate, to raise money for the maintenance and education of the son of the said mortgagor, and that therefore the City Council of Charleston had good reason to believe that the mortgagor could not have paid the bond, or at least had sufficient reason to put them upon inquiry, whether he had really paid the bond, as he appeared to have done by the recorded satisfaction.

I cannot agree with this view of the case. Because, in the first place, there is no evidence whatsoever that the City Council of Charleston had any other reason to be suspicious. We can perhaps see now, with our present knowledge, that the circumstance referred to was in fact calculated to excite the further suspicion of any one who had previously some other reason to be suspicious of wrong in the matter. But we have now all the allegations in the case. The City Council of Charleston knew nothing of all these at that time. In looking at the proceeding referred to, their attention would be naturally chiefly directed to the authority of the substituted trustee to satisfy the mortgage. His power to pledge it, had apparently no significance or importance under the circumstances of the case. It would not naturally be much dwelt upon by one who suspected nothing. And then it must be remembered that the pecuniary condition of all persons is constantly changing, and the destitution of the mortgagor might have been in some way relieved. Friends might have aided him to enable his wife to effect her loan, and besides all this, the defendant, Mary A. Ryan, was the owner of the fee. It was to her interest that the bond should be paid, and the mortgage satisfied. She might have paid her husband's bond. The plaintiffs could not know that she had not the means of doing so. The examination of titles to property is already sufficiently burdensome. It would be unreasonable to require those taking a title to investigate the private pecuniary circumstances of all

parties to the title, and to inquire into the probability of their being able to do what the public records stated they had done.

I therefore find as before stated, that the plaintiffs did not know, and had no good reason to suspect, that the recorded satisfaction of the mortgage in question, by the substituted trustee, was not the record of a *bona fide* satisfaction.

These being the facts of the case, the next inquiry is, what are the respective rights of the parties, under the state of the facts, and what is the law by which they are to be determined? Let us suppose, in the first place, that the obligor of the bond and the maker of the mortgage had alleged that they were paid and satisfied, and in proof of that fact had produced them as being in his own possession, with the signature and seal of the substituted trustee endorsed in blank upon each of them. Such possession of a bond and mortgage, and seal of the lawful holder, would be rightly interpreted according to circumstances. If found in the possession of a third person, it would naturally be interpreted to mean that an assignment was intended to be written over such signature and seal, whenever it should become necessary (and this in fact is constantly done in a thousand instances); but if found in the possession of the obligor and mortgagor, an equally fair presumption would be that it was evidence of payment of the bond, and that a satisfaction of the mortgage was intended to be written over such signature and seal on that security. And in fact and law the writing of either an assignment to the mortgage or of a satisfaction, would equally operate to satisfy the mortgage.

But the apparent evidence of satisfaction, in the case under consideration, is much stronger than in the case last supposed. What in that case might have been rightfully presumed, appeared by the records of this case to have been actually done. A certificate of the mortgage had in fact been written over the signature and seal in blank, had been duly proved for record by the affidavit of a credible and competent witness, and had been plainly recorded across the face of the record of the mortgage. And this alleged fraud (if fraud it was) had been made possible by the acts of the substituted trustee, Thomas E. Ryan, in endorsing on the mortgage his blank signature and seal in the presence of a witness, and so enabling the person entrusted by him with the

possession of the mortgage, to mislead and deceive, or to permit others to mislead or deceive, the plaintiffs, and to induce them to lend money on the faith of the recorded satisfaction.

The law in such a case seems to me to be very clearly settled by authoritative decisions in this state. In the case of *State Bank* v. *Cox & Co.,* 11 *Rich. Eq.,* 350, Chancellor Dargan in his decree on Circuit, says: "There is no doctrine of equity jurisprudence better supported by reason as well as authority than this, that when one of two innocent persons must suffer loss, it must fall on the party who by incaution or misplaced confidence has occasioned it, or placed it in the power of a third party to perpetrate the fraud by which the loss has happened." And upon appeal from this decision this doctrine of the Circuit Court was affirmed, and the appeal was dismissed; the Court of Appeals saying that whoever comes fairly by a security, as Cox did in this case, in the course of business, is entitled to hold it against him who passed it, or enabled another to pass it on him. In that case a power of attorney to transfer the bank stock in question (as is customary in sales of stock) had been endorsed upon the certificate of stock in blank. It was alleged and proved, on the part of the real owner, that the blank power of attorney was so endorsed on the certificate and delivered to the holder of it, only to be delivered by him to her agent in this country, to enable the latter to collect the dividends, and perhaps sell the stock, whenever he should be so directed. The person to whom it was so delivered by her never did deliver to her agent, but pledged it to Cox & Co., to secure his own debt to them. The Court of Appeals held that this blank power of attorney to transfer, enabled the person to whom it was entrusted to claim that the stock was his own property, and by pledging it to Cox & Co., to secure his debt, to deceive the lenders.

The same doctrine was affirmed in substance in the cases of *Reynolds* v. *Witte,* 13 *S. C.,* 15, and in *Calais Steamboat Company* v. *Scudder,* 2 *Black,* 372. See also 2 *Jones Mort.,* § 967. Indeed, the doctrine of equity jurisprudence, so clearly stated by Chan. Dargan, in the case of *State Bank* v. *Cox & Co.,* has become a stereotyped maxim of law. The application of this doctrine to the present case is so obvious that I need not dwell

upon it.   If there ever was a case in which the incautious and misplaced confidence of one person enabled a third person to perpetrate the fraud which has occasioned the loss, or if sanctioned would occasion the loss, to an innocent lender of money, this is such a case.

It has been argued before me upon the authority of many cases, beginning in this country with the leading case of the *United States* v. *Nelson,* 2 *Brock.,* 64, that the blank space over the signature and seal of the trustee in this case could not be filled by writing a satisfaction, because the satisfaction is under seal, and such a blank cannot be filled in a sealed instrument.   But in all the cases cited, this rule of law was admitted to be purely technical, and upheld simply by the weight of gradually accumulating authority.   And in the later cases, notably in that of *Pence* v. *Arbuckle,* 22 *Minn.,* 417, the strictness of the technical rule is largely relaxed, by invoking the doctrine of estoppel, especially in favor of innocent third parties.   In this connection see also *Gourdin* v. *Commander,* 6 *Rich.,* 497.

I question also whether a satisfaction of a mortgage can be regarded as technically a sealed instrument, any more than the endorsement of a promissory note would be made a sealed instrument by writing the words "signed and sealed" in the presence of a witness under the endorsement.   Proof of payment of the bond would of itself operate as a satisfaction, and the register can be ordered to enter satisfaction upon such proof.   And a simple receipt of payment of the bond, or the writing the words, "this mortgage is satisfied," would be a satisfaction.   As conclusive, it seems to me, of the question, in the case of the *State Bank* v. *Cox & Co.,* above cited, the blank power of attorney was under seal, and yet the filling up of the blank was held valid in favor of an innocent holder of the certificate of stock as a pledge.   In view, indeed, of the wide-spread custom of holders of bonds and mortgages endorsing their signatures and seals thereon in blank, in the presence of a witness or witnesses, for the purpose of ready assignment, and ultimate satisfaction, many titles would be now jeopardized by now declaring such blank· endorsements to be void.

The objection was also urged that the satisfaction in the pres-

ent case was signed and sealed in the presence of, and proved by, only *one* witness. But the mortgage in the body expressly provides that it shall be null and void whenever the debt it is executed to secure is paid; and this in equity, whether the mortgagor is in possession or out of possession. One credible and competent witness is certainly sufficient to prove payment of the bond, and by such proof to make the mortgage null and void, or, in other words, to satisfy it. In fact, in a great number of instances, the satisfaction is acknowledged directly, and by an original writing, across the face of the mortgage itself, in the presence of the register alone.

It was also argued before me that the infant *cestui que trust,* who was over the age of choice, was not a party to the petition under which Thomas E. Ryan was appointed substituted trustee, and therefore was not bound by his acts. It is sufficient to say to this question that the infant *cestui que trust* was a party to that petition, which was filed in his name by his next friend, his own father, in accordance with the well established practice of chancery at that time recognized.

It was also submitted in argument that in the order by which the substituted trustee was appointed power was given such trustee to pledge the bond and mortgage, and no power was given to satisfy the mortgage. But it is very evident the substituted trustee had all the ordinary powers of the original trustee. The bond was past due. He had therefore power to receive payment of it, and if he received payment of the bond, he not only had the power, but it was his stringent legal duty, to satisfy the mortgage. The power to pledge was only additional and extraordinary power, which he would not have had without such an order conferring it. It does not deprive him of the ordinary power of a trustee.

There is one view of the case which I think deserves consideration. The original bond and mortgage of W. B. Ryan to the original trustee are lost or destroyed, or not produced. The best evidence we have of their having existed is the record of the mortgage, proved by the affidavit of one of the witnesses in the register's office. The same record in evidence carries on the face of it the record of a satisfaction, duly proved by the affidavit of a

credible and competent witness.   The evidence of the satisfaction is *prima facie*, just the same as the evidence of the mortgage.

*Prima facie*, therefore, by intendment of law the mortgage is satisfied, and the faith and credit which is due to the public records of the state, which are established by law for the guidance and security of its citizens, requires that they should not be questioned, as against innocent third parties, without unmistakable proof, not only of a fraud, but of one to which the person alleging such fraud has in no way contributed.   In this case the allegations of the non-existence of the satisfaction endorsed on the mortgage, or of the forgery of the trustee's signature, cannot be proven, because the original mortgage cannot be produced, and the witness is now dead.   And if there was a fraud, the proof of it is obscure, and rests wholly on the testimony of the trustee, who repudiates his recorded satisfaction, and that testimony relates to transactions with the mortgagor, who is dead, and involves the conduct of the defendant, Mary A. Ryan, and of M. P. O'Connor, who was evidently the family solicitor, and who is dead.   And if there was a fraud in the matter of the satisfaction, we have seen besides that the trustee contributed to the recording of that satisfaction, by making the fraud not only possible, but easily and readily accomplished.

After full and careful consideration of the whole case, I therefore find as a matter of law, that as between the plaintiff, the City Council of Charleston, and all persons claiming under them, and the defendants, the trustee, and the *cestui que trusts*, the record of the satisfaction of the mortgage of William B. Ryan to the original trustee, afterwards held by the substituted trustee, is the record of a valid satisfaction of that mortgage.   That so far as that mortgage is concerned the title offered by the City Council of Charleston to the defendant, Mrs. Dorothea Blohme, to the property purchased by her, under the foreclosure of the defendant, Mrs. Mary A. Ryan, is a good and valid title.   And that therefore the defendant, Mrs. Dorothea Blohme, the purchaser, is bound to comply with the terms of sale in the original case of foreclosure between the City Council of Charleston as plaintiff and Mrs. Mary A. Ryan as defendant above stated.

As incidental matter, I further report that the defendant, Mary

A. Ryan, never renounced her dower on the mortgage of William B. Ryan to Patrick H. Ryan, trustee of T. J. Ryan, above reported. In view of the conclusions I have reached in this case, as above reported, it is unnecessary for me to consider the effect of that fact.

This report came before the Circuit Court upon the following exceptions taken thereto by the defendant, T. E. Ryan, trustee, and by Mrs. Ryan and the minor defendants:

T. E. Ryan's Exceptions.—1. Because the testimony shows that he never did receive satisfaction of the mortgage held by him as trustee, nor that he expressly authorized the entry of satisfaction.

2. Because if, as trustee, he had marked, or caused to be marked, the mortgage as satisfied on record without receiving satisfaction in fact, he would have been guilty of a breach of trust, and any person who accepted such satisfaction with knowledge or notice shares in the breach of trust.

3. Because the testimony shows that he never did receive the satisfaction of the mortgage in fact, but the City Council was in possession of facts sufficient to put it on the inquiry, and thus had notice of this.

4. Because a trustee cannot enter satisfaction on a mortgage without in fact receiving satisfaction; he cannot by deed authorize to satisfy a mortgage without in fact receiving satisfaction therefor, and such authority cannot be presumed against him.

Other Exceptions.—1. Because no interest or estate can pass under a satisfaction signed in blank upon a *stolen* mortgage such as that given to the trustee of the minor now dead, as stated in the facts of the report.

2. That the alleged satisfaction of the mortgage is no estoppel to the allegation that the bond and mortgage was unpaid when such truth was proven.

3. That the mortgagor, W. B. Ryan, now deceased, was out of possession when the alleged satisfaction was entered, and nothing but a deed from the mortgagee could then release the mortgage; and, secondly, that the alleged satisfaction is not a deed, having been signed in blank.

4. That the mortgagee was in possession of the mortgaged

premises at the time of the alleged satisfaction; and the alleged satisfaction is not a deed, having been signed in blank. That the alleged satisfaction, without other proof, is not a legal satisfaction against proof to the contrary; in this, that it is witnessed by only one witness.

5. That the minor defendants are innocent mortgagees in possession, and cannot be ousted, except, first, by conclusive proof, wherein the burden is always on the plaintiff; or, secondly, by a trial by jury, if it should be necessary to establish title.

6. That the minors, by law, are innocent parties to the wrong which has been done; and as to the City Council, their position, first, is at least doubtful; and, secondly, they were *particeps criminis* in the wrong—and in either case the loss should fall upon the city.

7. That the power of attorney, signed in blank by the trustee, was exhausted when the mortgage was pledged to Oakes, and it could not be exercised again; and, secondly, such satisfaction as this cannot be signed in blank.

8. Beyond the equity of redemption purchased by Mrs. Ryan at the sheriff's sale, no other estate passed in this land to her so that it could be by her mortgaged to the city, because she testified she knew nothing of this satisfaction; and there is no evidence of its delivery to her, or any pretence connecting her with this fraud.

10. That Mrs. Mary A. Ryan is entitled to dower in the premises in any event.

The Circuit decree was as follows:

This case was heard upon the report of Master Hanckel, and exceptions taken thereto by the defendants. The decision depends upon two questions: 1. Whether the City Council advanced the loan in question to Mary A. Ryan, the defendant, upon the belief that the satisfaction entered upon the mortgages to Thomas E. Ryan was regular and *bona fide* in all respects. 2. Whether the parties who induced such belief and consequent action of the plaintiff were enabled so to do by the fault, negligence, or other act of the said Thomas E. Ryan, trustee, mortgagee, without contributory negligence or other fault of the plaintiff. Both these points have been determined by the master

adversely to the defendants, and such findings are well sustained by the evidence. . The case is brought clearly within the principles of the cases of *Bank* v. *Cox & Co.* and *Gourdin* v. *Commander*, cited by the master, with others.

I need not consider *seriatim* all the matters argued before me, because they are all concluded by the principles laid down in these cases and the reasoning upon them of the master. That doctrine of stolen mortgage, invoked by Mary A. Ryan in her first exception, does not apply, because the mortgage was not stolen. It might apply if the satisfaction had been written in blank and the paper on which it was written, after having been safely put away, had been afterwards stolen and filled up, without fault or neglect of the mortgagee ; but this is not this case.

I do not find anything in the second exception of Mrs. Ryan that need be discussed, because the facts here, as they appear, entitle the plaintiff to the protection afforded by the principles of equity referred to.

That the mortgagor is out of possession can make no difference here. A deed may be necessary to reconvey the estate when title has passed out of the mortgagor ; but a satisfaction of a mortgage, by the authority of the mortgagee, would in equity release all the interest of the mortgagee, and the principles cited require that effect be given to this entry of satisfaction as if it had been actually intended by the mortgagee after payment of the debt, so far as the title of the purchaser of the premises in the present case is concerned.

The doctrine of the execution of uses under the statute does not apply here. The statute does not transfer the mortgage to the *cestui que trust*, and that would be necessary to divest the trustee mortgagee of the right to collect the debt and satisfy the mortgage. Nothing less would serve the purpose of defeating the equities of the plaintiff.

It is also contended that this is to be treated as the entry of an agent who has already exhausted his powers by a previous exercise of them. This would not avail the defendant unless it had been shown that the plaintiff had some means of knowing of the previous exercise of authority by the agent, of which there is nothing here.

The eighth exception of Mrs. Ryan seems to proceed upon the supposition that Mrs. Ryan's consent was in some way necessary to make the satisfaction valid; that if she did not so consent, it would not operate to enlarge her estate so that she could make a mortgage that would extend beyond her equity of redemption. To this I cannot agree. The mortgagee had the power to satisfy the mortgage without her, and when that was done, she was seized in fee, and the new mortgage attached to that estate.

The fourth exception of Mrs. Ryan insists that this was not a legal satisfaction, because it was against proof to the contrary, in that it was witnessed by only one witness. I agree with the master that one witness was sufficient, and adopt his reasoning on that point.

The master is undoubtedly right in leaving the question of Mrs. Ryan's dower out of this case. The existence of the claim in its present condition would not discharge the purchaser here.

The exceptions taken by Thomas E. Ryan, the trustee, may be disposed of by what has been said, with the additional remark that they could only apply to the case of a party dealing with the entry of satisfaction who was in possession of facts sufficient to put him on the inquiry; and that is not this case.

It is therefore ordered, adjudged, and decreed, that the defendant, Dorothea Blohme, the purchaser, do comply with the terms of sale in the original case of foreclosure between the City Council of Charleston as plaintiff and Mary A. Ryan as defendant. Also ordered and adjudged, that the costs of this case be paid out of the proceeds of said sale.

Mrs. Ryan and the minors gave notice of appeal upon the following exceptions: 1. Because the minors should have been granted a trial by jury of their title to the land. 2. Because the law declares their innocence and the facts declare the negligence of the city. 3. Because the power of the agent to fill the blank was exhausted after the hypothecation to Oakes. 4. Because the satisfaction was insufficient, having only one witness; especially when the mortgagor was out of possession. 5. Because the minors being mortgagees in possession, and vested with the fee under the statute of uses and trusts, nothing but a legal

deed can divest them of title.    6. Because there was no delivery of the satisfaction to Mrs. Ryan, because the same was a forgery, and because the mortgage was stolen.

*Mr. Wm. M. Thomas*, for appellants.

*Mr. G. D. Bryan*, contra.

March 16, 1885. The opinion of the court was delivered by MR. JUSTICE McIVER. [Omitting his statement of the case.]

The correctness of the conclusion reached below is so satisfactorily shown by the reasoning employed and the authorities cited by Master Hanckel, confirmed and endorsed as they are by the Circuit judge, that but little is left for us to add. There can be no doubt that at the time of the issue of the fire loan bonds which constituted the consideration of the bond and mortgage under which the lot in question was sold, the records, which was the proper source for the lender to go to to obtain such information, showed that the mortgage to the trustee, which is now claimed to be a prior lien, was fully satisfied and discharged by the mortgagee, or rather by one who stood in his place. This entry of satisfaction may or may not have been fraudulently done; but, even conceding that it was fraudulent, we do not see how it could affect the rights of the City Council unless they had notice of such fraud. The fact that they had such notice is negatived by the findings of the master, which are not only fully concurred in by the Circuit judge, but are likewise sustained by the evidence, and therefore, according to the well-settled rule, we are bound to conclude that the City Council had no such notice.

And when to this is added the further finding of fact, equally well sustained by the evidence, that the means of making such fraudulent entry of satisfaction (if indeed it was so) was afforded by the negligence of Thomas E. Ryan, the mortgagee, there cannot be a doubt about the result; under the wise and well-settled principle of equity "that where one of two innocent parties must suffer loss, it must fall on the party who, by incautious and misplaced confidence, has occasioned it or placed it in the power of a third party to perpetrate the fraud by which the loss

has happened." Thomas E. Ryan, being the legal owner and holder of the bond and mortgage, was the proper person to receive payment and enter satisfaction; and when he endorsed his name, under his seal, on the back of the mortgage, as the master finds that he did do, he placed it in the power of any person into whose hands the mortgage might fall to write above his name an acknowledgment of payment and a discharge of the mortgage, as was in fact done. There cannot be a doubt, therefore, as to whose negligence caused the loss.

But, as we have said, the case has been so fully considered and so satisfactorily disposed of that it is not necessary for us to enter into any further discussion of it, but will confine ourselves to a brief consideration of the several grounds of appeal. The first ground clearly cannot be sustained, inasmuch as it appears that the issues of law and fact were, by consent, referred to the master; and this would amount to a waiver of the right to a jury trial, if indeed such a right could ever have been claimed. The second ground raises mere questions of fact which have been disposed of by what we have already said. The third ground cannot be sustained: First, because it does not appear, and in fact the contrary does appear, that the blank above the mortgagee's name was ever filled but once; second, because the act of the mortgagee, in endorsing his name upon the mortgage and parting with the possession of it, afforded the opportunity and the means of perpetrating the very fraud which appellants allege has been committed; and whether so intended by the mortgagee or not can make no difference.

The fourth ground rests upon the proposition that a satisfaction of a mortgage must be executed in the presence of two subscribing witnesses. The statute in reference to the satisfaction of mortgages, as found in the *General Statutes* of 1872, p. 427–8, the law which was in force at the time of this transaction, does not require two witnesses, and we see no ground upon which the proposition contended for can be maintained. The fifth ground rests upon the assumption of fact that the minor mortgagees were in possession at the time the entry of satisfaction was made, but the evidence shows the contrary to be the fact; and we are utterly at a loss to conceive what the statute of uses

has to do with the question.   At the time the entry of satisfaction was made, the *cestui que trust*, Thomas J. Ryan, was alive, and the minor defendants had no interest whatever in the mortgage.   The sixth ground also rests upon assumptions of fact not sustained by the evidence, and cannot therefore be maintained.

The judgment of this court is that the judgment of the Circuit Court be affirmed.