The plaintiff on the trial at Warren, on the last circuit, before His Honor, Judge Saunders, offered evidence to prove that Rebecca was the daughter of a negro woman named Jenny, and produced the record of a *Page 384 
suit in Warren Superior Court to show that Jenny had been recovered by his testator, in his lifetime, from the defendant. The writ in that case, issued some time in January, 1834, and the plaintiff therein obtained judgment for Jenny at April Term, 1835. The writ in the present suit, issued 17 September, 1835. The plaintiff proved also that after the recovery aforesaid his testator hired Jenny to the defendant; that Rebecca was born while her mother was in the possession of the defendant, before the recovery, and a short time before the commencement of the suit in which that recovery was effected. It also appeared that the defendant, some time in March, 1835, put Rebecca in the possession (489) of one Lane, his brother-in-law, and that the defendant being about to send Jenny from Wayne County, where he resided, to the county of Warren, where the plaintiff's testator lived, as he had bound himself to do when he hired her, told Lane that if he would perform that service he might have Rebecca, to which Lane assented. There was no evidence to show in what way the defendant had obtained possession of Jenny, anterior to the commencement of the suit in which she had been recovered, as above stated. Evidence was then offered by the plaintiff to prove that his testator sent an agent to demand Rebecca of the defendant; that the agent carried with him a writ in the name of the testator against the defendant for the girl, but the agent, who was examined as a witness, could not state whether that writ had been served or not, though the clerk of the court stated that he had no recollection of having issued any other writ in the case. The agent stated that he made the demand and the defendant thereupon said that Rebecca was in the possession of Lane, and that nothing could be done until Lane, who was absent, should return. The defendant stated further on this occasion that he had given Rebecca to Lane, but he did not deny the plaintiff's right, nor did he set up a right in himself further than that which his possession gave him, nor did he intimate that the right was in anyone else. Upon this evidence, his Honor having intimated an opinion that the action could not be maintained, because there was no proof either of a demand before the suit was brought or of possession in the defendant when the writ was sued out, the plaintiff submitted to a judgment of nonsuit, and appealed.
It does not appear to us that this was a proper case for a nonsuit. We are now to take it for granted that the plaintiff is the owner of the slave, and the objection is that there was no detention by the defendant to authorize this action for the specific thing. *Page 385 
As to the want of a demand: We have held, in Knight v. Wall, (490) 2 Dev. and Bat., 125, that one is not necessary if the defendant had the possession and claimed the property at the institution of the suit. It is not easy to see, indeed, how a demand is requisite to give the action in any case, except to fix one then in possession with a liability to this kind of action, although he may part from the possession before action actually brought; for thus putting off the possession, after notice of the true owner, and a refusal to deliver to him, may be deemed covenous in respect to this remedy against the person thus refusing. According to the usages here another instance of a demand being proper is to put a bailee in the wrong. But where the possession is actually, or in a legal sense, in the defendant at the time of suit brought, that possession sustains the action without going back to any existing at a previous time. The question, therefore, is, whether the possession here was, legally speaking, in the defendant or some other person. Upon that question the opinion of his Honor seems to us to be erroneous. Not that he could have said the possession was in the defendant, when the writ was sued out, but that he could not say, upon this evidence, that the possession was not in the defendant. It was a proper case for the jury, with the aid of the court, to inquire how the possession was. There was evidence, both pertinent and cogent to the conclusion that Lane held for the defendant, and therefore that it was the defendant's possession. Such is the case, for instance, when one holds as bailee at will, or for the benefit of the owner, or a overseer or agent. When the possession, as it is called, of Lane commenced there are probable presumptions that it was not for himself, upon a claim of either permanent or temporary property. Indeed, the case states merely that in March, 1835, the defendant put "Rebecca in the possession of his brother-in-law Lane," but mentions no terms. It could not, however, have been on the consideration set up by way, namely, of remunerating Lane for carrying the mother to Warren, because the child was placed with Lane before the trial of the suit for the mother, and the latter was carried to Warren at the expiration of a hiring made after she had been recovered, though for what period does not appear. Nor could it have been on a hiring of the child, (491) for she was only two or three years of age, and must have been a charge instead of a profit. Nor would a jury be readily persuaded that the defendant had really given the negro to Lane, as he afterwards said to the plaintiff's agent he had done: First, because that is inconsistent with the other story that the child was subsequently the price of carrying the mother home. Secondly, because if a gift had been really intended it would probably have received the legal form of being put into writing. And lastly, because gifts of negroes are not common between *Page 386 
brothers-in-law, while it is not so very uncommon for them to aid each other in efforts to defeat actions against them by contrivances fully as reprehensible as an attempt by shifting from hand to hand, to deceive the owner as to the possession of a chattel he wishes to recover, and thereby put him to delay and difficulty in bringing suit against a proper person. These were considerations well worthy to be weighed by the jury as tending to establish either that the alleged gift, sale, and change of possession, were feigned for the purpose of hindering the plaintiff of this remedy, and so were covenous as against him, Purcel v. McCallum, 1 Dev. and Bat., 221; or that, in fact, there was no contract between the defendant and Lane whereby the title was even apparently changed, but simply that Lane held the possession for the defendant, and as his agent, as seems most probably to have been the truth. At all events it was fit the jury should have judged of that, and as the case was not submitted to them on that point there must be a venire de novo.
PER CURIAM. Judgment reversed.
Cited: Slade v. Washburn, 24 N.C. 416; Webb v. Taylor, 80 N.C. 306.
(492)