## NIELSEN v. HYLAND et al.

No. 3124.   Decided January 24, 1918.   (170 Pac. 778.)

1. REPLEVIN—ACTIONS—DEMURRER.   A complaint alleging that defendants wrongfully took into their possession on or about December 22, 1913, two horses and two blankets which they have since wrongfully withheld and retained, notwithstanding plaintiff's demand, states a good cause of action, and is not subject to objection for uncertainty or ambiguity.   (Page 337.)

2. REPLEVIN—ACTIONS—CONDITIONS PRECEDENT—DEMAND.   Where a person comes lawfully into possession of another's property, a demand by the person entitled thereto must first be made before an action can be brought for its recovery, unless other facts and circumstances are shown which obviate demand, and hence, where defendants' attitude showed that a formal demand for return of plaintiff's horses which they had taken up as trespassing animals would have been unavailing, it appearing when plaintiff requested return of the animals defendants asserted a feed bill against the

only animal which remained alive, and told the sheriff to direct plaintiff to bring an action, the necessity for formal demand was waived. (Page 338.)

3. REPLEVIN—DEMANDS—SUFFICIENCY. Where plaintiff, whose two horses had been taken up by defendants as trespassing animals, demanded the return of the team, though he was informed that one of the horses had died, such demand is a sufficient demand for the remaining horse to support an action of replevin. (Page 338.)

4. REPLEVIN—DEMAND—NECESSITY. Where defendant son discovering trespassing horses on their property took up the animals, but failed to impound them as estrays and deliver them to the poundkeeper, as required by Comp. Laws 1907, tit. 3, c. 1, which provides for impounding and advertising of estrays, defendants by their conduct became trespassers from the beginning, and no demand by the owner was necessary in order to enable him to maintain replevin for the horses. (Page 339.)

5. REPLEVIN—ACTIONS—MAINTENANCE. In replevin for two horses, where plaintiff knew that at the time of the institution one of the animals had died, the value of the animal which died while in defendant's possession, cannot be recovered. (Page 340.)

6. REPLEVIN—ACTION—EVIDENCE. In replevin for horses, where defendants, while in possession of the animals, worked one of them, no damages for use of such animal can be awarded; there being no evidence as to the rental value of horses at the place of defendants' residence, or that plaintiff could have used the horses at any time during the period of their wrongful detention. (Page 342.)

Appeal from District Court of Box Elder County, First District; *Hon. N. J. Harris,* Presiding Judge.

Action by A. J. Nielsen against F. Hyland and another.

Judgment for plaintiff. Defendants appeal, and plaintiff assigns cross-errors.

AFFIRMED.

*A. G. Horn* for appellant.

*W. J. Lowe* for respondent.

THURMAN, J.

Plaintiff brought this action for the replevin of two horses and two blankets which he alleges defendants wrongfully took

into their possession on or about December 22, 1913, and which they have since wrongfully withheld and detained, notwithstanding his demand therefor.

Defendants separately demurred to the complaint for want of sufficient facts, and upon the grounds of uncertainty and ambiguity in that the complaint failed to state in what manner the defendants wrongfully went into possession or wrongfully detained the property, or when or where the plaintiff demanded possession of said property. The demurrer being overruled, the defendants answered, admitting that the plaintiff was the owner of the property in question, but denied generally all the other allegations of the complaint.

The case was tried by the court without a jury, and judgment was rendered for the plaintiff for the recovery of one of the horses described in the complaint and for damages in the sum of one dollar. Defendants appeal.

The assignments of error relied on in the argument are that the court erred in overruling defendants' demurrer and in finding that the property was wrongfully detained, and that there was a proper demand and refusal to deliver the same.

The facts, briefly stated, are as follows: The defendants, F. Hyland and James Hyland, are father and son. Each of them owns a ranch in close proximity one to the other in the vicinity of Terrace, Box Elder County, Utah. On or about the day mentioned in the complaint, December 22, 1913, two horses, one gray and one bay, strayed into the field on the ranch of F. Hyland, and were taken care of by him in connection with other horses belonging to the ranch. One of the horses in question was covered with a blanket, and the ground was covered with snow. The ownership of the horses was unknown to defendants, and the fact that the horses were estrays was quite generally communicated to the people in the neighborhood. The horses were not taken up as estrays or advertised as such as the law provides. Comp. Laws Utah 1907, tit. 3, c. 1, relating to estrays and trespassing animals. The horses remained on the ranch, and in January, 1915, the bay horse died. In October of the same year the plaintiff visited the ranch in search of a team of horses he had lost in

December, 1913.   The defendant F. Hyland, who lived part
of the time in Ogden, was absent at the time of the visit of
the plaintiff, so that what occurred at that time took place
between plaintiff and the other defendant, James Hyland.
Plaintiff was conducted by James Hyland to the ranch of F.
Hyland, and there identified the gray horse as his own, and
was informed that the bay horse had died the winter before.
Plaintiff demanded a team of horses of the defendant James
Hyland, and was informed that there was a feed bill against
the horses, and that he, James Hyland, had nothing whatever
to do with them; that he was in charge of his father's ranch
during his absence and laid no claim to the horses, and in-
formed plaintiff that he would have to see his father who was
in Ogden.   The horses were worked by the defendants a few
days while they were on the ranch.   There is substantial
testimony to the effect that for the reasons above stated James
Hyland refused to deliver the property.

Plaintiff left the ranch without the horses, and suggested
at the time that he would place the matter in the hands of the
sheriff.   James Hyland immediately thereafter wrote to his
father in Ogden, informing him of the plaintiff's demand.
His father thereupon wrote to the sheriff of Box Elder
County informing him of the circumstances under which the
horses came into his possession, and also informed him that
his son had communicated to him the demand of the plaintiff
for a team of horses, and that, if the same were not delivered,
the matter would be left to the court to determine.   The letter
also informed the sheriff that, if plaintiff "showed up in
Brigham," to tell him to institute suit against the writer. The
foregoing is the substance of the material parts of the letter.
Shortly after the receipt of this letter by the sheriff this action
was commenced to recover possession of the property.

The objections raised by the demurrer are not well taken.
Plaintiff alleged in simple and concise language the ownership
and value of the property, the wrongful possession by the
defendants; the demand by plaintiff, and that defend-
ants still continue to wrongfully detain the property.      1
The complaint undoubtedly states a cause of action.

Furthermore, the complaint is not objectionable for uncertainty or ambiguity. To have met the objections raised by the demurrer would have required the pleading of evidentiary matter which would itself have been objectionable. The demurrer was properly overruled.

It is urged, however, with considerable vigor that, inasmuch as the defendants did not come into possession of the horses wrongfully, a demand by plaintiff for their    2, 3
possession became absolutely necessary, and that no proper demand was made.

It is undoubtedly elementary doctrine in the law of replevin that, where a person comes lawfully into possession of another's property, a demand by the person entitled thereto must first be made before an action can be brought for its recovery, unless other facts and circumstances are shown to exist which in law are sufficient to obviate the necessity of a demand. For instance, the attitude of a party concerning the property in dispute may be such as to show conclusively that any demand upon him for possession thereof would be futile and unavailing. In such case it cannot be successfully contended that a demand is necessary before bringing an action. In this case it cannot be denied that plaintiff made a demand on the defendant James Hyland in October, 1915, for a team of horses. James Hyland did not offer to surrender the one horse then on the ranch. He said there was a feed bill against the horses, and referred the plaintiff to F. Hyland, the other defendant, and then wrote to F. Hyland and informed him of the demand that had been made. F. Hyland, treating this as a demand for a team of horses, wrote the sheriff requesting him to tell the plaintiff to institute a suit against him, the writer of the letter.

It seems to the court that there was a positive demand made on James Hyland for the team which was afterwards treated by F. Hyland as a demand on himself. It is true that the demand was for a team, and not alone for the living horse, but in order for defendants to avail themselves of this point, which, at most, is a technicality without merit, they ought at least to have tendered such portion of the property as was within

their power to deliver. It is a fundamental principle, in fact self-evident and axiomatic, that the greater includes the less, and hence, if a person owns a severable part of a thing or things in dispute and claims more than he owns and makes demand therefor, it cannot be contended that he did not demand the part he owned. It is possible that in some cases of that kind the person for whom he claims would be justified in refusing the demand in its entirety, but that is another question. We are dealing now with the question of whether or not a demand was made for the horse that could be delivered. We are of the opinion that a demand was made for the possession of the horse in question sufficient to satisfy the requirements of the law in such cases. If there is any question as to the sufficiency of the demand, a formal demand was rendered unnecessary by the attitude of the defendants, which clearly evinced that such demand, if made, would not be complied with. When demand was made upon James Hyland he said there was a feed bill against the horses, and that plaintiff would have to see his father. When his father was informed of this demand, he wrote the sheriff, requesting him to tell the plaintiff to bring an action against the writer. There was sufficient appearing in the attitude of the defendants to justify the belief that they would not surrender the property within their power to deliver, however proper and formal the demand might have been. In such cases demand is not required. *Churchill* v. *More*, 4 Cal. App. 219, 88 Pac. 290; *Schmidt* v. *Bender*, 39 Kan. 437, 18 Pac. 491; *Perkins* v. *Barnes*, 3 Nev. 557; *Oswald* v. *Hutchinson*, 26 Ill. App. 273; *Shoemaker* v. *Simpson*, 16 Kan. 43; *Proctor* v. *Tilton*, 65 N. H. 3, 17 Atl. 638; Shinn, Replevin, section 299.

Besides this, there is another phase of this question to be considered, and one which, in our judgment, shows this to be a case in which demand for possession of the propetry previous to bringing an action for its recovery is not required. The statutes of this state, heretofore referred to, in unequivocal terms state what steps shall be taken in cases of this kind in order to justify the owner of premises in assuming any dominion whatever over the animals of others

found trespassing thereon. The statute provides that he may restrain them, but shall within twenty-four hours thereafter deliver them to the poundkeeper of the precinct, the duties of whom in respect thereto are clearly defined. If that course is pursued, the person restraining the animals is protected; otherwise not. If he holds them in violation of the strict terms of the law, he becomes a wrongdoer, and cannot claim justification for any conduct in relation to the property. It is the duty of the poundkeeper to advertise the animals in a newspaper published in the county and post notices at public places in the precinct. The manifest purpose of the statute is twofold: (1) To afford protection to the owners or real property against animals trespassing thereon; and (2) to enable the owner of the animals, if possible, to recover their possession. Such statutes are usually strictly construed, and in cases where no attempt at all is made to comply with the law, as in the present case, the person assuming dominion over the animals, and especially if he uses them as his own, is considered a wrongdoer from the beginning, and may be so treated by the owner. 3 C. J. 82; 1 R. C. L. 1143-1145, inclusive; *Barrett* v. *Lightfoot*, 1 T. B. Mon. (Ky.) 241, 15 Am. Dec. 110; *Newsom* v. *Hart*, 14 Mich. 235; *Weber* v. *Hartman*, 7 Colo. 13, 1 Pac. 230, 49 Am. Rep. 339; *Havird* v. *Lung*, 19 Idaho, 790, 115 Pac. 930; *Mills* v. *Fortune*, 14 N. D. 460, 105 N. W. 235. These authorities and numerous others that might be cited to sustain the position that we have assumed that under the admitted facts of this case defendants by their conduct concerning the property in question became trespassers at the very time of the taking, and hence under the admitted weight of authority the law did not require plaintiff to make any demand whatever for the property previous to commencing the action.

The assignments of error presented by appellants, in the opinion of the court, are without merit, and should not prevail.

Respondent has submitted cross-assignments of error in which he contends that the trial court erred in ordering judgment against the plaintiff as to the value of the bay horse, and in refusing to give judgment in favor of the

plaintiff for the admitted value thereof in the sum of $200, and also that the court erred in limiting plaintiff to nominal damages in the sum of one dollar.

Concerning the value of the bay horse for which respondent contends he was entitled to judgment, it will be remembered that this horse died while in the possession of defendants in January, 1915. Aside from any question as to whether the defendants might or might not be liable for the value of the horse in a proper proceeding seasonably instituted, we are not prepared to hold that they are liable in the present case. At the time that plaintiff commenced this action he knew that the bay horse was dead and had been dead for nearly a year. He was fully informed of this fact by James Hyland defendant, and other witnesses. He knew that he could not recover possession of the property sued for; for it was not in existence. He knew that part of the property at least could not be recovered in specie. He elected to pursue a form of action which, as far as this particular horse is concerned, was not available. He brought his action in replevin, or in claim and delivery, as it is called in our law, and alleged in his complaint, among other things, "that said defendants still unlawfully and wrongfully withhold and detain said personal property," a statement which, as concerns the horse in question, plaintiff knew was untrue in fact, and could not be sustained by the evidence. We do not believe that there is even a fiction of the law under which respondent can justly recover for the value of the bay horse in this proceeding. The doctrine at common-law, as announced in Shinn on Replevin, section 40, is as follows:

"It is a general principle of the common law of replevin that the action cannot be maintained against one who is not at the time the action is begun in the possession of the chattels sought to be recovered. Replevin being an action to obtain possession, it necessarily follows that the defendant must have possession of the thing sought to be obtained by the plaintiff. This is manifestly true because a defendant not in possession of an article could not be adjudged to make return of that article. Therefore, if the defendant has not the actual or constructive possession and control of the chattel sought to be recovered, the action of replevin cannot be maintained."

Section 41, same authority, states the exception to the rule to be where defendant has concealed, removed, or disposed of the property for the purpose of avoiding the writ.   34 Cyc. 1396-1400, discusses both the rule and the exception, and agrees generally with the doctrine announced in Shinn, supra. We know of nothing in our statutes which justifies a departure from the above well-established rule, to such an extent, at least, as to authorize a suit in replevin for a dead horse known to have been dead for more than ten months and fictitiously alleged in the complaint to be of the same value as if living. The complaint in this regard was not a "statement of the facts constituting the cause of action."   There was as much difference between the facts alleged and the facts established as there is between a dead horse and a live one.   The integrity of our reform system of pleading should be upheld and maintained to the end that truth, and truth alone, may constitute the foundation of every demand for a redress of wrong in a court of justice.   If the complaint in this case had stated the facts within the knowledge of the plaintiff in ordinary and concise language, it would have appeared that part of the property was in existence and in possession of defendants, and part not.   If the complaint otherwise showed that the property while in existence was converted by the defendants, it would have stated a cause of action both for the recovery of such as could be delivered and damages for the remainder. This would have been a compliance not only with the letter, but with the very spirit, of the Code.   Such a state of facts should probably be set forth in separate causes of action, but there is no reason why they might not be joined in one complaint.

The testimony shows that during the time the horses were in the possession of the defendants they used them on a few occasions in and about their work.   For this use respondent contends he was entitled to judgment for damages, and that the court erred in limiting the damages to one dollar.   Testimony was introduced tending to show that the rental value of horses varied from $1.25 per day to

thirty dollars per month, but where, when, and in what locality these values prevailed was not shown. It appeared affirmatively in the evidence that there was no rental value for horses at Terrace, because no horses were rented there. While plaintiff testified that his business was ditch and railroad work and farming, in which business horses were used, he did not testify that he could have used them at any time during the period of their wrongful detention by defendants. In Shinn on Replevin, section 46, it is said:

"The damages for the use of the property cannot be recovered unless the party shows that the property has a usable value, and that he was in a position to use it, and was prevented from doing so by the wrongful detention of his adversary."

In view of the insufficiency of the evidence upon which to base a finding for substantial damages, we do not feel authorized to hold that the court erred in finding nominal damages only.

For the foregoing reasons respondent's cross-assignments of error are not sustained, and the judgment of the trial court is affirmed; respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.