## PETTY et al v. BORG.

No. 6684. Decided July 20, 1944. (150 P. 2d 776.)

Rehearing denied November 10, 1944.

See 5 C. J. S. Appeal and Error, Sec. 1563. Previous demand as condition precedent to maintaining action of replevin against innocent purchaser of chattel taken wrongfully, note, 51 A. L. R. 1465. See, also, 46 Am. Jur. 35.

MULLINER, PRINCE & MULLINER and F. RAY BROWN, all of Salt Lake City, for appellant.

ALLEN G. THURMAN, of Salt Lake City, for respondents.

WADE, Justice.

Plaintiff, a partnership known as Petty Motor Company, brought this action in claim and delivery to recover from the defendant Kenneth Borg a de luxe Ford Station Wagon or its value. From judgment for plaintiff, defendant appeals. The facts are as follows:

On May 31, 1941, R. C. Felsted, State Procurement Officer for the Treasury Department of the Federal Government, pursuant to previous bid, gave to plaintiff a purchase order for the purchase by the United States Government for the National Youth Administration of four de luxe Ford Station Wagons at $831 each to be delivered to Cliff Bletzacher at Salt Lake City, Utah. Thereafter, the defendant, an engineer employed by Mt. Pleasant City on a W. P. A. project sponsored by it, desiring a new state wagon for his private use, contacted Felsted, who told him he could obtain one for him, whereupon he gave a cashier's check made payable personally to Felsted in the sum of $831.50 as the purchase price of a new de luxe Ford Station Wagon. Felsted thereupon gave to plaintiff a second purchase order which purported to order for purchase by the U. S. Government a de luxe Ford Station Wagon for the Works Projects Administration, c/o City Recorder, Mt. Pleasant, Utah. Feltsed did not pay the money he received from defendant to the Government or to plaintiff, and the second order was not authorized by the Government and no record or copy thereof was ever placed on or kept in the Government records or files.

On July 8, 1941 Felsted, purporting to act as State Procurement Officer of the Treasury Department, requested in writing that plaintiff deliver to defendant the station wagon in question "for delivery to the project at Mt. Pleasant, Utah." And accordingly, plaintiff delivered the same to defendant who gave a receipt therefor to that effect. At the same time Felsted gave defendant a letter authorizing him to assume custody of the station wagon and to use, sell or dispose thereof as he saw fit. Thereupon defendant transferred this station wagon to his son Grant Borg, who obtained a license therefor and later took it out of the state where it remained until after this suit was commenced, but was returned to defendant in Utah in January, 1943. Plaintiff was able to obtain only three other de luxe Ford station wagons to fill the first purchase order, but later obtained and substituted for one of the de luxe station wagons ordered

a super de luxe station wagon, for which Felsted assured plaintiff it would receive the regular price which was greater than the price called for by the purchase order.

In due course plaintiff filed its claim with the government for payment for these five station wagons. The government paid $3,326 for the four station wagons delivered to the N. Y. A. under the first purchase order but expressly refused to pay for the station wagon delivered to the defendant under the second order on the ground that such purchase was a personal transaction of Felsted and was not authorized by the government and the government had received no benefit therefrom. Thereupon plaintiff attempted to negotiate a settlement with Felsted who was then not in the government employment, he having left the state. Plaintiff also called the matter to the attention of the defendant but failed to make any collection thereon and commenced this action on November 20, 1943, without first demanding possession.

The court found in substance the foregoing and also the following facts: That Felsted signed and delivered to plaintiff a purchase order in the usual form used by the Treasurery Department of the United States Government in purchasing automobiles, purporting to order an automobile of the style and type delivered to the defendant for the use of the government; that thereafter the defendant represented to the plaintiff that he was authorized by Felsted to receive delivery of said automobile as the agent of the government, pursuant to the purchase order; that the purchase order was in fact not authorized by the government or any agency thereof but was issued by Felsted in violation of law and the government did not thereby become obligated to pay therefor; that the defendant did not receive delivery thereof on behalf of the government, but acted in his own behalf only, with the intention of using and disposing of the automobile for his own private purposes as he saw fit; that in delivering said automobile to defendant, the plaintiff believed in and relied on the representations that it had entered into a valid contract with the United States Government to sell said automobile to the government, and

believed that pursuant to such contract it was delivering the automobile to the defendant as the agent of the government and that the government thereby became obligated to pay the purchase price therefor, that otherwise plaintiff would not have delivered the said automobile to the defendant; that the government has not paid the purchase price thereof but has refused and still refuses so to do. To some extent these findings are mixed questions of law and fact, but the facts found are supported by the evidence and must be taken by us as true.

Defendant argues that the payment by the government of $3,326 was in fact a payment of the purchase price of the four de luxe station wagons delivered by plaintiff; three to the N. Y. A. and one to the defendant. That it is the super deluxe delivered to the N. Y. A. which has ■ not been paid for. This argument is not well taken. The defendant's money which he paid to Feltsed was never paid to the government or to plaintiff. The government paid the $3,326 as the purchase price of the four wagons delivered to the N. Y. A. under the first purchase order, the exact amount called for by that order. The station wagon received by defendant was delivered to him under the second purchase order. This order the government, as shown by Exhibit "G," expressly refused to recognize or pay for the wagon delivered thereunder. Thus plaintiff has not been paid for the station wagon delivered to defendant.

Defendant contends that Exhibit "G" was inadmissable in evidence under the hearsay rule. This exhibit purports to be a letter from Clifton E. Mack, Director of Procurement, Treasury Department at Washington. It was addressed to plaintiff and referred to plaintiff's claim for ■ $831.50 for the purchase price of the station wagon delivered to defendant and stated that the purchase in question was a personal transaction of Felsted, unauthorized by any governmental requisition therefor and resulted in no benefit to the government and therefore there is no basis for governmental liability and informed plaintiff that the claim cannot be certified for payment. Plaintiff did not offer this

letter to prove the nature of the transaction to be as therein stated. Those facts were proved by other evidence. If this letter is what it purports to be, and no objection was made that it was not properly identified, it constituted an official refusal by the government to allow or pay plaintiff's claim. That question being one of the issues in the case its admission in evidence did not violate the hearsay rule. See Jones on Evidence, 4th E., Section 297; 22 C. J. 194; Wigmore on Evidence, 3rd Ed., Sections 1360 to 1363.

Defendant insists that the misconduct of Felsted is immaterial in determining the rights of these parties; that defendant is no more responsible for Felsted's misconduct than is plaintiff; that even if the government has been imposed on it is not complaining and infers that ■ therefore no one else can. The government has no reason to complain. It merely refused to be bound to Felsted's acts and refused to pay for the station wagon delivered to defendant. It is plaintiff or defendant who must suffer by reason of his misconduct. Had the government paid the purchase price of the station wagon in question, then the situation would be different. If plaintiff has lost its title or right of possession to this station wagon it did so as a result of the transactions between plaintiff and Felsted; therefore, the acts of Felsted become material in determining the rights of these parties in this station wagon.

Defendant seems to argue that Felsted in his dealings involved in this case, was acting as the agent of the government and within the scope of his authority, and that the government is bound thereby. In support thereof he cites some federal statutes, and presidential proclamations which deal generally with the purpose of the Procurement Division of the Treasury Department at Washington. They show nothing as to his actual authority. Although he represented to plaintiff and to some extent to the defendant that he was acting as the government agent, he was not in fact acting for the government at all, nor did he intend that the government would be bound by his actions. This is evident from the facts that he kept no records or files of these transactions

in the government records or files; he entered into an agreement with the defendant that the car would become defendant's property and not governmental property; he received the defendant's check payable to himself personally and not as Procurement Officer and did not pay the money over to the government; he had no requisition from any governmental agency to purchase the car for it; he caused the car to be delivered to the defendant with the intention that defendant could use or dispose of it as he saw fit. In other words, without any authority from the government, he represented to the defendant that he could buy him a car through the government at the regular government discount and thereby obtained the defendant's money therefor. At the same time he represented to plaintiff that he was purchasing the car as the agent of the government for its use on the Mt. Pleasant project and that it was being delivered to defendant for that purpose, and thereby obtained the plaintiff's car. He gave the car to the defendant and put the money in his own pocket. These acts were not authorized by the government and not within the scope of his authority.

The Federal courts have held without exception that the United States does not undertake to guarantee the fidelity of any of its officers or agents whom it employs, and that it is not bound or estopped by the acts of such officers or agents not within the scope of their authority. Lee v. Munroe, 7 Cranch 366, 3 L. Ed. 373; In re Floyd Acceptances, 7 Wall. 666, 19 L. Ed. 169; Stansbury v. United States, 8 Wall. 33, 19 L. Ed. 315; Whitesides v. United States, 93 U. S. 247, 23 L. Ed. 882; Hawkins v. United States, 96 U. S. 689, 24 L. Ed. 607; Wisconsin Cent. R. Co. v. United States, 164 U. S. 90, 17 S. Ct. 45, 41 L. Ed. 399; Hume v. United States, 132 U. S. 406, 10 S. Ct. 134, 33 L. Ed. 393; Maryland Steel Co. v. United States, 235 U. S. 451, 35 S. Ct. 190, 59 L. Ed. 312; 26 R. C. L. 1432. Under these rulings the United States was not bound by the acts of Felsted. It was not a party to this contract and title to the station wagon did not pass to it.

Defendant argues that Felsted, in his dealings with him, was as far as he could see acting within the apparent scope of his authority. He testified that he thought he was purchasing surplus government property; that to his own knowledge Felsted had advertised such property for sale, including automobiles, some of which he thought were new. However, the paying for this car by a check payable to Felsted personally, and Felsted's letter directing plaintiff to deliver the car to defendant "for delivery to the project at Mt. Pleasant, Utah" are not consistent with that theory. It is evident that defendant was trying to obtain the benefit of the reduction in price at which the government could purchase a car by purchasing it through Felsted. In doing so, he paid the purchase price to Felsted and thereby trusted him to pay that money on the purchase price of the car. This Felsted failed to do. Also in taking delivery of the car he aided Felsted in representing to plaintiff that the car was sold to the government when in fact the car was being obtained for his own personal use. On the other hand from the standpoint of the plaintiff, under the facts as found by the court, everything appeared to plaintiff to be a regular sale to the government. Under those facts neither the title or right of possession passed from the plaintiff.

Where a person by false representations induces an owner to deliver goods to him believing that he is selling such goods to the principal of such person and not to the person who takes delivery, when such person is in fact acting only in his own behalf and not as agent of his supposed principal, neither title nor the right of possession passes from the owner to such person. The owner did not consent or agree to sell the goods to the person who took delivery and the person to whom the owner thought he was selling made no contract to purchase. Without a contract of sale no title or right of possession passed from the owner and he may recover the goods or the value thereof from the person who took delivery or from an innocent purchaser from such person. *Rodliff* v. *Dallinger*, 141 Mass.

1, 4 N. E. 805, 55 Am. Rep. 439; *Moody* v. *Blake,* 117 Mass. 23, 119 Am. Rep. 394; *Mayhew* v. *Mather,* 82 Wis. 355, 52 N. W. 436; *Alexander* v. *Swackhamer,* 105 Ind. 81, 4 N. E. 433, 55 Am. Rep. 180; *Soltau* v. *Gerdau,* 119 N. Y. 380, 23 N. E. 864, 16 Am. St. Rep. 843; *Dean* v. *Yates,* 22 Ohio St. 388; *Smith Premier Typewriter Co.* v. *Stidger,* 18 Colo. App. 261, 71 P. 400; *Cundy* v. *Lindsay,* L. R. 3 App. Cas. 459, 6 Eng. Rul. Cas. 211-HL. So here, plaintiff being led to believe that it was selling this car to the United States Government when in fact it was a private transaction with Felsted and Borg, there was no contract of sale and no title or right to possession passed to Borg. The doctrine of the above cases does not apply where a private firm or person through its dealings or representations is estopped from denying that another is in fact its agent and is therefore bound by the acts of such other person. However, as above pointed out, the government is not bound or estopped by the acts of its officers or agents which are not within the scope of their authority, so the doctrine of estoppel is of no aid to the defendant here.

It was not necessary for the plaintiff to make demand on the defendant for the possession of this car before bringing suit. Where possession of property belonging to another is obtained wrongfully, the owner is not required to demand possession before commencing suit. *Watkins* v. *Jensen,* 58 Utah 13, 197 P. 222; *Nielsen* v. *Hyland,* 51 Utah 334, 170 P. 778. Here plaintiff delivered possession to defendant, but such delivery was induced by a false representation that defendant was taking possession as agent of the government. Under such circumstances the taking of possession was wrongful and no demand was necessary before bringing suit. However, even if possession were rightfully acquired, if the conduct of the defendant was such that it appears that a demand would have been unavailing no demand is required. In *Watkins* v. *Jensen,* supra [58 Utah 13, 197 P. 224], we said: "It is, however, the general rule that, even though the possession of property has been rightfully acquired, if the conduct of the party is

such that it appears that a demand would have been unavailing, no demand is required. *Nielsen* v. *Hyland,* supra; 34 Cyc. 1404, 1405. In this case the defendant, by his answer, denied ownership of the animal in plaintiff, and denied that he wrongfully or forcibly obtained possession of the animal, or that he wrongfully or unlawfully retained such possession. It must therefore be apparent that any demand would have been useless, and would not have changed the position taken by the defendant upon the trial of the action." So here, the defendant in answer to plaintiff's complaint alleged that he was the owner of the car, and it is therefore obvious that a demand would have been unavailing.

The defendant contends that since the car was out of the state when the action was commenced the court failed to get jurisdiction of the case. The authorities cited in support of this proposition do not discuss jurisdiction, but merely hold that in an action for the possession of personal property, the fact that the defendant was not in possession of such property at the time of the commencement of the action is sufficient to defeat the action, especially where this fact is known to plaintiff when he commenced the action. *Watkins* v. *Jensen,* supra; *Nielsen* v. *Hyland,* supra; 46 Am. Jur. 21, Sec. 33. The facts here are that immediately after defendant obtained possession of the car he made a bill of sale thereof to his son Grant Borg. It was delivered to Grant Borg in March, 1942, who was then in the Army in California and it remained out of the state until after the action was commenced. In October, 1942, Grant came home on furlough and while here at that time he transferred his interest in the car back to the defendant and said he would send it home to defendant soon. The car was a long time in coming but was finally delivered to defendant by an army officer early in January, 1943. This action was commenced Nov. 24, 1942, but no service of summons or process was made on defendant until Jan. 13, 1943, when the sheriff took the car from the defendant pursuant to the order of the court in this action.

There is a line of cases which hold that until the officer gets possession of the property the court does not get jurisdiction over the property sufficient to enforce its judgment by contempt proceedings but is limited to its judgment for the value of the property. *Universal Credit Co.* v. *Antonsen*, 374 Ill. 194, 29 N. E. 2d 96, 130 A. L. R. 626, see also note 130 A. L. R. 632. There are cases holding contrary. These cases do not hold that the court does not have jurisdiction to try the action, but limit its power to deal with the property possession of which the officer of the court has failed to obtain. They are based on the assumption that the defendant has possession of the property but is concealing it from the officer. In the instant case the officer did obtain possession of the property, but the property was out of the state when the action was commenced. There are also other cases which discuss the jurisdiction of courts of limited jurisdiction under express statutes, and similar questions are often discussed under venue statutes. 46 Am. Jur. 39 to 41, sections 65 to 67. No case has been cited and we have found none which hold that the court does not get jurisdiction to try the action because the property involved is outside of the state at the time of the commencement of the action.

As above pointed out, it is generally held that a plaintiff cannot prevail in an action for the possesion of personal property where at the time of the comencement of the action plaintiff knew that defendant did not have possession of such property. But actual manual possession is not necessary if the property is held for defendant by another or is subject to his order under such circumstances that he could make delivery thereof if he so desired. *Webb* v. *Taylor*, 80 N. C. 305; *Meixell* v. *Kirkpatrick*, 33 Kan. 282, 6 P. 241; *Jones* v. *Green*, 20 N. C. 488; *Maloney* v. *Neville*, 128 Mo. App. 616, 107, S. W. 4; *Krebs Hop Co.* v. *Taylor*, 52 Or. 627, 97 P. 44, 98 P. 494. In *Van Neste* v. *Conover*, 20 Barb., N. Y. 547, it was held that under provisions of the code giving the alternate remedy, possession in the defendant is not necessary because judgment for the value may

be taken if delivery cannot be had. The cases also hold that where property is taken from the defendant by an officer under a court order then later the court has ordered it returned to defendant, but while it is still in the custody of officer, an action for replevin will lie against the defendant even though it has not actually reached his possession, he being regarded as having sufficient control over the chattles sued for to maintain such action. *Teeple* v. *Dickey*, 94 Ind. 124; *McArthur* v. *Carrie's Adm'r.*, 32 Ala. 75, 70 Am. Dec. 529; *Henderson* v. *Felts*, 58 Ala. 590. In the instant case the car was not in the actual physical custody of the defendant when the action was commenced, however, he claimed to be the owner and to have the right of possession and the person who had custody of the car recognized defendant's right of possession, held the same subject to his orders and had arranged to make delivery of it to him. It is true that considerable time had elapsed between the time the arrangements to deliver were made and the actual delivery of the car, but there is nothing to indicate that defendant could not have had delivery as soon as practicably possible had he so desired. It is also true that the car was farther away than is usually the case, but none of the cases base the decision on mere distance. Thus under the foregoing facts plaintiff was entitled to recover.

There are other points which are argued or hinted at which are not here discussed but we have considered them carefully and find them without merit. Judgment is therefore affirmed, plaintiff to recover his costs.

WOLFE, C. J., and McDONOUGH, J., concur.

LARSON, Justice (concurring).

I concur in the order affirming the judgment. But I cannot concur in some of the implications of the opinion. I find nothing in the record to indicate any lack of good faith on the part of Borg; nor do I find anything in the record to justify an inference of any fraud practiced or attempted on the part of Borg. He paid in advance his money for the

car, to the man from whom, or through whom he was purchasing. When the car was available for delivery, Petty, on the order of Felsted, knowingly and freely delivered the possession of the car to Borg. Felsted, the seller, as far as Borg was concerned, executed and delivered to Borg all necessary papers to secure registration of the car, and certificate of title. Borg therefore stood in the clear, except for the fact that Felsted his vendor, did not have title to the car. Because Felsted through misrepresentations deceived Petty who had the title to the car, and so did not acquire the title, he could pass none to Borg. But since Borg made no misrepresentations to Petty there was no fraud or deceit on his part. The following facts are evident from the record, and beyond that nothing need be said:

Petty had the title to the car; because of Felsted's misrepresentations and wrongful handling of the transaction, he never obtained the title from Petty; Borg therefore received no title to the car from Felsted, his vendor; Petty not having transferred title, remained the owner of the car; as the owner in possession, Petty knowingly freely and lawfully delivered the possession of the car to Borg, who thereby obtained lawful possession. Petty, as owner of the car, was entitled to possession upon demand; he commenced this action in replevin without making a demand; Borg did not raise the question of demand in defense, but pleaded title in himself and sought redelivery to him of the car which had been taken by the sheriff under a writ of delivery; it is evident therefore that a demand by Petty for possession before suit would have been unavailing. In November, 1942, when Petty commenced his action the car was not in the state of Utah, nor in the personal physical possession of Borg, but Borg held the registered certificate of title; and the legal possession of the car, it being in the hand of his agent, subject to his order. In January, 1943, when summons was served, Borg personally had the physical possession of the car, and it was taken by the sheriff under writ.

Under such facts the legal questions are posed: (1) Can plaintiff maintain an action in replevin against a defendant, who at the time plaintiff begins his action is not personally in actual physical possession of the property; (2) under the facts in this case, was a demand a prerequisite to the maintenance of the action?

(1) Under our practice plaintiff may recover either the property or the value thereof. *Dolinsky* v. *Williams,* 56 Utah 186, 189 P. 873; *Kunz* v. *Nelson,* 94 Utah 185, 76 P. 2d 577, 115 A. L. R. 1322; Sec. 104-30-11, U. C. A. 1943. And section 104-16-1, U. C. A. 1943 provides that plaintiff may claim the delivery of the property to him pendente lite any time after filing complaint and before answer. It is essential that plaintiff plead a right of immediate possession of the property; that is he must plead a present tense right of possession, *James* v. *Jensen,* 50 Utah 485, 167 P. 827, and a wrongful detention by the defendant, *Woodward* v. *Edmunds,* 20 Utah 118, 57 P. 848. Certainly, plaintiff after demand for possession need not post a guard to see that defendant does not dispossess himself of the property while plaintiff hies to the courthouse to file his case. Since replevin is a possessory action, if defendant had not possession at time suit was filed, he may set up that as a defense, and if established plaintiff's case fails. But if defendant does not raise that defense, but pleads his own right of possession and justifies his failure to deliver on grounds other than his own non-possession, the fact that defendant did not personally have physical possession of the property should not bar plaintiff's suit. Unless non-possession at time suit was filed is pleaded as a defense, the question of defendant's possession should be of no moment until time of trial and judgment, when judgment should be entered for return of the property, or for the value if return cannot be had. *Kunz* v. *Nelson,* supra. Defendant herein did not plead his non-possession as a defense, but defended his possession as rightful. Furthermore, he had possession when delivery was claimed before anwser made. I, therefore, concur in answering question (1) against defendant.

(2) The second question posed above is conclusively answered by Mr. Justice Wade by pointing out that defendant by answer denied plaintiff's right of possession and claimed ownership and right to possession of the car in himself. It is therefore apparent that demand if made would have been unavailing. *Watkins* v. *Jensen,* 58 Utah 13, 197 P. 222.

TURNER, District Judge, concurs in the views expressed by LARSON, J.

MOFFAT, J., deceased.