## CHIPLOCK v. STEUART MOTOR CO.
### No. 1256.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 6, 1952.

Decided Nov. 4, 1952.

Howard J. McGrath, Washington, D. C., with whom H. Grady Warburton, Washington, D. C., was on the brief, for appellant.

Louis H. Mann, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Involved in this appeal is a dispute between a man who sold his automobile and received in payment a forged check, and a dealer who later bought the automobile and paid value therefor. The case was tried on an agreed statement of facts, to which we must refer at some length for a proper understanding of the circumstances and the legal questions presented.

Plaintiff, an Army officer, having been ordered to Korea, advertised his Buick automobile for sale in a newspaper at a price of $1600. About 8:30 in the evening of July 27, 1951, he received a telephone call from one who said his name was Gallop of the Gallop Motor Company and that he was an automobile dealer and would like to come out and look at the car. About 15 minutes later the same person telephoned plaintiff and said that he could not come but that he would send a representative whose name was Fred Updergraff. Upon inquiry plaintiff stated that he would accept a company check.

Later the same evening a man arrived and said that he was Updergraff, that Mr. Gallop had sent him to look at the car, and that Gallop Motor Company had a quick sale for a car of the kind that plaintiff had advertised. He looked the car over, ran the motor a while and then said he would take it. He produced a check of the Gallop Motor Company, signed "Mark Gallop," made payable to plaintiff, the amount of $1600 being filled in with a check-writer. Plaintiff produced his certificate of title and suggested that the assignment of it should be executed before a notary public and the name of the purchaser, Gallop Motor Company, filled in. Updergraff asked him not to do that, that a buyer was waiting for the car and all that was necessary was that the plaintiff sign the assignment of title. This the plaintiff did after being assured that Mr. Gallop would complete the assignment. Updergraff requested that plaintiff's license plates be left on the car and said they would be returned the following morning. Plaintiff removed some personal effects from the trunk of the car and it was driven off by Updergraff. By this time it was around 11:30 p. m.

The next morning plaintiff remembered that his operator's permit and insurance card and the registration card for the vehicle had been left in a plastic case attached to the steering column of the car. When he telephoned the Gallop Motor Company to obtain these items he was informed that the company had no knowledge of the transaction, did not know Updergraff and that the office of the company had been broken into some time prior

thereto and company checks and a check-writer had been stolen. Thereupon plaintiff called the police. The man representing himself as Updergraff and as an employee of the Gallop Motor Company was subsequently identified as one Albert Crapulli.

Early on the day following the transaction referred to, one Wear (a confederate of Crapulli), brought the car to the place of business of the defendant motor company, represented that he was George E. Chiplock the owner of the car and offered to sell it to defendant. Wear dealt with a Mr. Jenkins, one of defendant's salesmen, and was offered $1200 for the automobile but refused that offer as being too low.

Wear then left with the car but returned about 30 minutes later and told Jenkins that his offer was as good as anyone else had made so he would sell him the car. When asked if he had the title with him Wear took it from his pocket. Jenkins informed Wear that he, Wear, would be required to assign the title. When Jenkins went to check the motor and serial numbers on the car Wear picked up a pen as though he were about to sign the title. Jenkins returned from checking the motor and serial numbers and was handed the registration card and certificate of title which bore the signature of plaintiff, George E. Chiplock. Jenkins then asked if Wear had any identification and Wear handed him Chiplock's driver's license and insurance card. Jenkins compared the signature on the driver's license with the signature on the title and of course they corresponded since they had both in fact been made by the same person, Chiplock.

Wear arranged with Jenkins to have a Steuart Motor Company check drawn on a bank in Maryland payable to George E. Chiplock. He said that he wanted to get cash for the car and asked that someone go with him to the bank to aid him in cashing the check. Jenkins accompanied Wear to the bank where Wear forged the endorsement with the name of George E. Chiplock, Jenkins endorsed it and the amount of the check was given to Wear in cash.

Jenkins is a notary public of the State of Maryland and after entering that state he asked if Wear made oath to the assignment on the certificate of title, to which Wear responded that he did. Jenkins intended to complete the oath on the title but had not done so prior to reading in the newspapers the next morning of the Chiplock incident. The assignment had not been completed as of the date of trial.

Plaintiff sued defendant Steuart Motor Company for return of the automobile or its value. Defendant denied that plaintiff was entitled to the automobile and by a counterclaim demanded that it be given title thereto. The case was tried on the agreed statement of facts to which we have referred. The trial judge filed a written opinion, awarding his decision to defendant. He based his decision on certain findings of fact and conclusions of law, which we shall discuss in connection with appellant's claims of error.

■■ Appellant argues that it was error for the trial judge to rule that "good but voidable title" passed from plaintiff to Crapulli. Whether or not title passes is usually a question of intent. We think it is correct to say that when a seller purports to transfer title to one who is in fact a stranger to the transaction, no title (void, voidable, or otherwise) flows from the seller to a wrongdoer who has fraudulently held himself out as agent of such stranger. This is so because one of the supposed parties to the legal transaction is actually wanting. In such a situation the seller may usually follow the property and recover it from an innocent purchaser. Russell Willis, Inc., v. Page, 213 S.C. 156, 48 S.E.2d 627; Rodliff v. Dallinger; 141 Mass. 1, 4 N.E. 805; Mayhew v. Mather, 82 Wis. 355, 52 N.W. 436; Alexander v. Swackhamer, 105 Ind. 81, 4 N.E. 433, 5 N.E. 908. Cf. Dudley v. Lovins, 310 Ky. 491, 220 S.W.2d 978. But this is to be distinguished from a case where a seller intends to transfer title to one with whom he deals though he was deceived as to the buyer's real identity. It is usually held that such an impostor receives a title which is voidable.

See, e. g., Dresher v. Roy Wilmeth Co., 118 Ind.App. 542, 82 N.E.2d 260.

■ This plaintiff at all times apparently supposed himself to be dealing with a representative of Gallop Motor Company. The check he received was on a stolen blank and was filled in with a stolen Gallop Motor Company check-writer and was apparently signed by Mark Gallop. Plaintiff was assured that the Gallop Company would complete his assignment on the certificate of title. Therefore we think it is correct to say that plaintiff intended to sell his automobile to the Gallop Motor Company and not to the impostor before him[1] and the impostor obtained no title.

■ But it does not necessarily follow that plaintiff is entitled to prevail. He is confronted with the rule of estoppel. The doctrine that an owner may follow his property, stated in the cases above cited, does not operate to defeat a bona fide purchaser for value where the owner has been negligent or is otherwise estopped from asserting his title or denying the wrongdoer's authority to sell. Russell Willis, Inc., v. Page, supra; Petty v. Borg, 106 Utah 524, 150 P.2d 776 are among the many cases supporting that position. Congress gave legislative approval to this rule of law when it enacted the Uniform Sales Act into our Code, and provided:

"Subject to the provisions of chapters 11–16 of this title, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*" Code 1951, 28–1207(1). (Emphasis ours.)

In our jurisdiction this rule of estoppel was explicitly spelled out and applied, though on somewhat different facts, in General Credit v. Universal Credit Co., 69 App.D.C. 80, 99 F.2d 115. See also Ryan v. Spaniol, 10 Cir., 193 F.2d 551.

■ Plaintiff attacks the application of the principle that "where one of two innocent persons must suffer, the one whose act enabled the wrongdoer to commit the wrong must be the one to bear the loss." He says that because there was no express finding that he was negligent, the rule does not apply. But cognizant that certificates of title are indicia of ownership, we think it may fairly be said as a matter of law that plaintiff was negligent in his dealings with Crapulli with reference to the certificate. Section 6(a) of the Vehicle Title and Registration Regulations for the District of Columbia provides: "Any person, [with exceptions not here material] who disposes of a used vehicle within the District to any person * * * shall, within 4 business days after such disposal, *assign,* execute and deliver *to the acquirer,* a certificate or a certificate of title *duly assigned by the disposer to the acquirer.*" (Emphasis supplied.) This regulation created a duty on the part of the seller not to deliver a certificate of title assigned in blank. The obvious purpose of such a requirement was to make it extremely difficult, if not impossible, to perpetrate such an unlawful scheme as was here accomplished.

Had plaintiff completed the assignment to Gallop Motor Company the schemers would have found it necessary to forge not only the check but also the new assignment to their purchaser. Had the title certificate shown the assignee to be Gallop Motor Company it is difficult to see how the fraudulent scheme could have been successfully carried out. Certainly the schemers would have been hard put to convince a purchaser (especially an experienced automobile dealer) that he was dealing with the Gallop Motor Company. Plaintiff delivered to Crapulli his document of title and by his negligence facilitated the subsequent sale to defendant. Moreover, by leaving his license plates on the car, and his registration card, driver's permit and insurance card on the steering post, he furnished Crapulli and Wear still easier means of accomplishing their nefarious purpose. But for such acts of appellant, those men could

1. But see White v. Pike, 240 Iowa 596, 36 N.W.2d 761.

hardly have failed to arouse the suspicion of any prospective purchaser. Therefore, though appellant may not have been negligent in the usual tortious sense of the word, we think his acts of omission or oversight made it proper and correct for the trial court to rule in favor of defendant.

We do not say that compliance with the regulation will always protect a seller or that violation thereof will always divest him of protection. Each case must be decided on its own facts. We rule only that violation of the regulation, which was designed to support the security of the market place and protect sellers as well as purchasers, is negligence as a matter of law when the violation is the cause of the injury and produces a situation where one of two innocent parties must bear the loss. This principle is universally recognized in modern jurisprudence, as is shown in almost all the cases we cite in this opinion, and in many others as well. The troublesome question of the transfer of automobile documents of title is the subject of a recent and exhaustive annotation in 18 A.L.R.2d 813. See, also, Commercial Finance Corp. v. Burke, 173 Or. 341, 145 P.2d 473, 151 A.L.R. 690. Cf. Richardson v. Seattle-First Nat. Bank, 38 Wash.2d 314, 229 P.2d 341.

■ Appellant challenges the correctness of the finding below that defendant used reasonable care and was a bona fide purchaser of the automobile. The argument is that the assignments on the reverse of the certificate of title were dated one day prior to that on which Wear appeared at defendant's place of business and that defendant's agent was negligent in not discovering that the certificate contained two assignments in blank. Appellant says that because of these facts defendant's representative, Jenkins, should have required a specimen signature for comparison purposes and would then have discovered the fraud. But Jenkins was led to believe that he was dealing with the true George E.

Chiplock because of the representations of Wear, aided by Chiplock's driver's license and insurance card. Thus there was evidence to support the finding of the trial court that Jenkins acted with reasonable care and was not negligent in failing to discover facts which may or may not have aroused the suspicions of a reasonable man.

■ Next we consider the contention that the attempted assignment of the certificate of title was defective on its face because it was not verified as required by law.[2] Appellant cites Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975, in support of his position. There Pearl, an automobile dealer, devised a plan designed to afford him a measure of security in his transactions. Under this plan a seller to Pearl would make an unacknowledged assignment in blank and deliver the assignment and possession to Pearl. Pearl sold two automobiles to a dealer and delivered to him possession of the automobiles and incomplete assignments (in return for a check which proved to be invalid). On the strength of these the dealer obtained mortgages on the automobiles. The case was a contest between Pearl and the mortgagee who foreclosed. Pearl contended that because the original assignments were incomplete the legal title remained in the original owners and he, Pearl, was entitled to possession as against the mortgagee who should have been on notice because of the incomplete assignment. Ruling that an unacknowledged assignment in blank was insufficient to pass title, the court also held that Pearl was not estopped to assert his interest in the automobiles because the title certificates were incomplete on their face. The court agreed with Pearl that the assignments were sufficient to put the mortgagee upon inquiry to learn the true facts. But that situation is entirely different from this case. Here, the purchaser reasonably believed that he was dealing with the person whose name appeared as owner on the title. We think also the lack of a verifica-

2. Vehicle Title and Registration Regulations of the District of Columbia, secs. 1(h) and 6(e) provide:
  "Executed.—Signed in ink, if a natural person, in his true and lawful name

* * * verified before a person authorized to administer oaths.
  "All assignments herein required shall be executed."

tion of a signature on the back of a certificate does not as a matter of law constitute notice under these circumstances.

Two other cases relied on by appellant are also distinguishable. Peper v. American Exchange Nat. Bank in St. Louis, 357 Mo. 652, 210 S.W.2d 41, and Wills v. Shepherd, Mo.Sup., 231 S.W.2d 843. The defendant in the Peper case had actual knowledge that an assignment had not been completed or acknowledged. In the other, the court ruled that it was apparent on the face of the title certificate that both a husband and his wife owned an interest in an automobile and that an unacknowledged assignment signed only by the husband should have put a purchaser on notice that the wife had an interest in the automobile even though the purchaser believed he was dealing with the husband alone.

We realize that under our decision Mr. Chiplock must bear a heavy loss, unless he is able to recoup that loss from the rogues who swindled him. But since it was his own acts which helped them succeed in their rascality, we have no right to transfer that loss to the defendant. See Central Nat. Bank v. National Metropolitan Bank, 31 App.D.C. 391, 17 L.R.A.,N.S., 520.

Affirmed.