M. BROTCHINER & SONS, INC., Plaintiff, *v.* M. ULLMAN, INC., Defendant.

Supreme Court, New York County, August, 1931.

*David Bernstein*, for the plaintiff.

*Tolleries & Gluskin* [*Irving R. Kass* of counsel], for the defendant.

UNTERMYER, J. On May 9, 1929, an impostor, whose identity seems never to have been ascertained, appeared at the sales rooms in New York city where the plaintiff was engaged in the sale of furs. He introduced himself as Herman Goodman, a brother of Victor Goodman, a reputable dealer of Toronto, Canada, for whom he said he was authorized to make purchases of furs. From the plaintiff's stock he selected various skins at an aggregate price of $2,029.75. For these he paid by two checks drawn on the Royal Bank of Canada, which he carried with him and which purported to be signed by " V. Goodman." The skins, he said, were intended for export to Canada and, in order to reduce the duties payable at the Canadian frontier, he requested receipted bills for less than the purchase price. The plaintiff, therefore, delivered to him, together with the skins, receipted bills made out to V. Goodman, aggregating $1,451 instead of for the real purchase price. Soon thereafter the checks received by the plaintiff in payment for the skins were discovered to be forged and it was ascertained that Victor Goodman, of Toronto, had no such brother or employee.

On May 11, 1929, the same individual, now representing himself to be Victor Goodman, appeared in Buffalo at the factory where the defendant is engaged in manufacturing and trading in furs. He stated that on account of delays incident to importation into Canada, he desired to sell the furs at cost. In confirmation he exhibited the receipted bills received from the plaintiff, showing the sale of the furs to V. Goodman for $1,451. He gave also the name of his hotel in Buffalo. Inquiry by the defendant showed that a Victor Goodman was registered there. This defendant finally agreed to buy the furs for $1,400 and delivered its check for this amount, which was immediately paid. The plaintiff, having thereafter ascertained that the defendant was in possession of the furs, made demand for them and, the demand having been rejected, began this suit.

I am convinced that both parties acted in good faith and both,

I think, exercised that degree of care which may reasonably be expected in transactions of this character. The only question then remaining is, which of these two parties, though innocent of wrong, must suffer the consequences of illegal acts committed by a third. It is entirely clear under the circumstances here that the impostor acquired no title to the merchandise and consequently that no title passed to the defendant. The impostor was only intrusted by the plaintiff with possession of the merchandise for transmission to his alleged principal. The plaintiff never sold nor did it intend any sale to him. (*Cundy* v. *Lindsay*, L. R. 3 App. Cas. 463.) Of such cases it has been said that " There is no intention on the part of the vendor to sell to the pretended agent or representative and no title passes." (*Phelps* v. *McQuade*, 220 N. Y. 232.)

The result is different where the vendor, though induced by false statements of fact, intends to give title to the vendee. Such a sale, though voidable between the parties at the instance of the vendor, passes title to the vendee. (*Edmunds* v. *Merchants' Despatch Transportation Co.*, 135 Mass. 283.) The sale here was not merely voidable but void (*Hentz* v. *Miller*, 94 N. Y. 64), because there was no purchaser and without a purchaser there could be no sale. Defendant relies, however, on the receipted bills delivered by the plaintiff to the imposter, and which, it is insisted, vested him with the indicia of ownership. (*Island Trading Co.* v. *Berg Bros., Inc.*, 239 N. Y. 229; *Dows* v. *Kidder*, 84 id. 121; *Voorhis* v. *Olmstead*, 66 id. 113.) These decisions rest upon principles of estoppel and proceed on the theory that where the owner vests ostensible ownership in another by whom the property is offered for sale, he is justly reponsible for the consequences if third persons take him at his word. But here such representations as the bills contained showed the furs to have been sold to Victor Goodman. They were destructive of any claim by any other person of ownership of the furs. The bills contained no representation that the bearer, by whatever name he might describe himself, had title thereto. In purchasing the merchandise the defendant was not misled by these receipted bills to believe that any one except Victor Goodman was the owner of the furs. The plaintiff, therefore, made no representation contributing to the fraud upon the purchaser. It was the impostor's representation concerning his own identity, coupled with the result of the defendant's investigation at the hotel in Buffalo, on which the defendant relied and by which it was deceived. But for that deception the plaintiff was not responsible and the rule of *caveat emptor*, therefore, applies.

Accordingly, the plaintiff is entitled to recover the reasonable value of the furs, which I find upon the evidence to be more nearly

reflected by the price of $1,400 paid by the defendant, than by the price at which plaintiff sold the furs. If this was not approximately the market value of the furs, it is highly unlikely that the plaintiff would have attempted to deceive the Canadian customs authority by reduced bills for that amount. I find, therefore, that the plaintiff is entitled to judgment against the defendant for the sum of $1,451, with interest thereon from June 13, 1929, amounting in all to the sum of $1,636.72, judgment for which is hereby directed.