16106

RUSSELL WILLIS, INC., v. PAGE

(48 S. E. (2d) 627)

*Messrs. Hingson & Todd,* of Greenville, for Appellant,

*Messrs. Wyche, Burgess & Wofford,* of Greenville, for Respondent,

July 14, 1948.

BAKER, C. J.: This is an action for the possession of a 1947 Buick Convertible Coupe, instituted in the usual manner by the appellant against the respondent, and stems from the facts and circumstances hereinafter set out as briefly as is consonant with an understanding of the issues.

Appellant, a corporation, with its principal place of business in Nashville, Tenn., is engaged in the sale of auto-

mobiles, new and used, but specializing in the procurement and sale of new Buick automobiles, and although it does not have the agency for Buick automobiles, sells more of this make of automobile than the authorized Buick dealer in Nashville.

On May 11, 1947, Mrs. E. F. Stacker, H J. Saltzman and one, Bernard Hinson, the owner, general manager, and employee, respectively, of Farnsworth-Stacker, a reputable company, engaged in various lines of business at Clarksville, Tenn., a distance of approximately forty miles from Nashville, came into the appellant's place of business for the purpose of purchasing one or more Buick automobiles. At that time, the appellant had on hand a new four door Buick sedan, and the Convertible Coupe, the subject of this action (and probably other new Buick automobiles). On that day Mrs. Stacker purchased the four door sedan, but it was not delivered to her until the following day, as May 11, 1947, was Sunday. While there Mrs. Stacker and especially Saltzman seriously considered purchasing the Convertible Coupe, which was priced at $3,795.00. Following the purchase of the four door sedan, the Coupe was then priced to Mrs. Stacker or to Saltzman at $3,595.00. As they were leaving Mr. Saltzman stated that "he would send back and get the Buick Convertible for $3,595.00."

On May 29, 1947, Bernard Hinson walked into the office of appellant and stated that he had come after the Convertible Coupe for Saltzman. After a slight argument over the amount to be paid therefor, a different salesman handling this sale, appellant agreed to comply with its former offer, and Hinson delivered to it a Farnsworth-Stacker printed check signed "E. F. Stacker," payable to appellant's order in the sum of $3,595.00. Whereupon, appellant prepared a Motor Vehicle Purchase Contract in duplicate, showing the make of the car, the body style, the motor number, etc., and that it had been paid for in full by check, and had Hinson sign the name of H. J. Saltzman on both, delivering the original

thereof to Hinson, and retaining the duplicate. Appellant then delivered the Coupe to Hinson, assisted him in procuring a license therefor in the name of Saltzman, which was paid for by a check issued by Hinson, presumably signed in the name of either Saltzman or Mrs. Stacker; and the appellant then securely fastened this license to the Coupe before Hinson drove it away.

When the check to appellant in said sum of $3,595.00 was presented for payment through regular banking channels, the bank on which it was drawn (First Trust & Savings Bank of Clarksville, Tenn.) discovered that the signature thereto was a forgery, and of course refused payment. Upon this information being promptly conveyed to appellant, then for the first time did the appellant communicate by phone or otherwise with Saltzman, who verified the information. Immediately, officers of the law, including the F. B. I., were notified of the fraud which had been perpetrated and the hunt was on for the Coupe and for Hinson. It is probably unnecessary to here record that Hinson left the employment of Farnsworth-Stacker on May 27th or 28th, 1947, without notice, and has not since been in Clarksville, Tenn.

The respondent was born and reared in Greenville, S. C., and has lived there his entire life with the exception of three years in the Army. He is a young man, married and has one child. He is engaged chiefly in body and fender work, owning his shop and employing some help; and as a side line, previous to acquiring the Convertible Coupe here involved, bought and sold second hand cars. He bought old cars and wrecked cars, repaired them and sold them; and he also repaired cars for the general public when such cars were brought to him.

On June 3, 1947, the respondent, Charlie Ayers, Langford Smith and James Allison, all of Greenville, were travelling in Mr. Ayers' automobile going from Greenville to New Jersey for the purpose of at least three of them each buying an automobile, the respondent being one of such

prospective purchasers. About fifteen miles south of Danville, Va., and late at night, as they came over the rise of a hill they noticed a Greyhound bus stopped on the highway, and commenced to slow down, and about this time some one (probably the bus driver) started waving with a flare in his hand to stop them. When they stopped, the information was given them that there had been a wreck and they may be needed to take somebody to the hospital. At this moment a man who represented himself to be H. J. Saltzman, but who in fact was Hinson, was trying to climb up the bank to the highway and away from the wrecked car, and with the assistance of the respondent and others got up on the highway. The wrecked automobile was the Buick Coupe which Hinson had obtained from the appellant. Although the car was badly wrecked, the respondent and Mr. Allison succeeded in driving it back on the highway. Hinson, who claimed that his name was Saltzman, had been accompanied by a sailor. Both were injured in the wreck. At the request of Hinson (Saltzman to respondent), the respondent examined the car to ascertain if it could be driven in to Danville, and although the windshield had been knocked down over the steering wheel, and all of the wheels were bad, having been bent, it was the opinion of the respondent that it could be driven in. Respondent then helped the man who said his name was Saltzman into the car, and the sailor was put or got into the Ayers car with the respondent and his friends for the purpose of being taken to a hospital. Respondent and his companions drove back of the wrecked Buick car to see if it got started all right. Noticing that the wheels were wobbling considerably, they remained back of it. When they had proceeded about two miles, the right rear wheel was warped or bent to such an extent that the tire rubbed against something and blew out. Both cars were stopped, and the respondent and others changed the tire on the Buick, at which time Saltzman (Hinson) complained of his back and leg hurting him. Thereupon the respondent had Saltzman (Hinson) move over to right of the seat, finished breaking

out the windshield so he could see to drive, and started to drive on to Danville. One of the front wheels was rubbing on something and the car couldn't be driven over five or ten miles per hour. After driving in this fashion for five miles, it was apparent that in such condition it couldn't last to reach Danville, so the car was stopped and the front wheel jacked up and it was found that only one lug was in place. After making temporary repairs they continued towards Danville. The respondent asked Saltzman (Hinson) where he was going, the reply to which question was, to Washington, D. C. Respondent next inquired what he was going to do with the wrecked car, and Saltzman (Hinson) said "he was going to sell it to the Buick people in Danville, that that was about all there is left to do." Respondent then informed Saltzman (Hinson) that he was the proprietor of a body and fender shop and would be interested in buying the car if it could be bought right. After negotiating a while, they agreed on a price of $1,350.00, which price was high taking into consideration the wrecked condition of the car.

Before paying over any amount, respondent required evidence of title, which was furnished in the form of the original of the Motor Vehicle Purchase Contract, showing payment in full by check of the purchase price, and corresponding with the make, type and motor number on the car; and also the registration card which checked with the motor number, and corresponded with the license number on the car. When respondent paid over the $1,350.00 for the car, he had Saltzman (Hinson) assign or transfer the Motor Vehicle Purchase Contract to him. The signature "H. J. Saltzman" corresponded with that of "H. J. Saltzman" appearing on the contract when the car was purchased from the appellant. This tranaction was had not far from Danville. Immediately thereafter Saltzman (Hinson) and the sailor were carried to a hospital in Danville, the former being unable to walk when he got there and had to be carried in.

Respondent did not proceed farther north than Danville, Va. On the following morning he purchased one tire, one tube and one new wheel for the Buick, and had one wheel straightened, and was then able to drive the wrecked car to Greenville. After getting it to Greenville, he made extensive repairs to it, totaling in all an estimated amount of $1,100.00, thus making this car cost him about $2,450.00.

Hinson was finally arrested, and is now serving a sentence in prison for either this crime, or some other crime formerly committed. It was on information obtained from Hinson that the automobile was located in the possession of the respondent. F.B.I. men interviewed respondent, and were promptly shown the automobile involved, and acquainted with the facts hereinabove related surrounding respondent's acquisition of it. Thereupon, the F.B.I. notified the appellant of the whereabouts of the car and of the claimed ownership thereof for value by the respondent, and left it where they found it, in the possession of respondent.

Appellant, through its President and majority stockholder, came to Greenville and demanded of respondent the possession of the automobile, which had then been repaired, and his demand was refused. Whereupon, this action followed.

The complaint alleged that the appellant was the owner and holder of the legal title to the car and that it had been deprived of its possession by the trick, fraud and false pretense of one Bernard Hinson.

The respondent entered a general denial, and also alleged that he was a *bona fide* purchaser for value without any knowledge of the alleged fraud, and also that the appellant was estopped to assert its legal title to the car.

We quote from the Statement in the Transcript of Record:

"At the close of the testimony the Plaintiff moved for a directed verdict in its favor. The Court refused to grant

motion but reserved the right to enter verdict for the Plaintiff *non obstante veredicto.* The jury found for the Defendant after which the Plaintiff moved for judgment *non obstante veredicto* on the following grounds:

"(1) That the undisputed testimony showed that Defendant could not be a *bona fide* purchaser for value.

"(2) That the undisputed testimony showed that title to the car was still in Plaintiff and that it had been deprived of its possession under such circumstances that it could assert its title to and recover possession of said automobile from even a *bona fide* purchaser for value.

"(3) That no estoppel could arise in behalf of, the Defendant and against the Plaintiff because the undisputed evidence showed:

"(a) No negligence on the part of the Plaintiff,

"(b) that the Defendant was himself guilty of negligence in the transaction, and .

"(c) that even if Plaintiff could be assumed to be negligent, such negligence was not the proximate cause of the loss to the Defendant."

The record does not disclose the grounds of the motion for a direction of verdict, but for the purpose of this appeal we will assume that they were substantially the same as the ones on which the appellant moved for judgment notwithstanding the verdict of the jury.

There are four exceptions to the refusal of the trial judge to grant these motions, but the appellant in its printed argument has condensed the issues to two, (1) Was the defendant (respondent) a *bona fide* purchaser without notice, and (2) Was the plaintiff (appellant) estopped to assert its legal title.

In his order refusing the motion of the appellant for judgment *non obstante veredicto,* the trial Judge has very succinctly stated the governing law of this case as applied in South Carolina, and we quote therefrom.

"There can be no doubt that the plaintiff did not divest itself of title to said automobile by the purported sale to H. J. Saltzman upon the false and fraudulent representation of Hinson that he was authorized by Saltzman to purchase said car for and on his behalf. It follows that the defendant, Page, acquired no title in the purchase of the car from Hinson. Under such circumstances, ordinarily, the original seller is entitled to the recovery of his property even as against a subsequent *bona fide* purchaser for value and in good faith. See the annotations contained in 13 L. R. A., N. S., at page 413, and L. R. A. 1916-D, 801. See, also, *M. Brotchiner & Sons, Inc., v. M. Ullman, Inc.* [141 Misc. 102], 252 N. Y. S. 244. But the authorities in this connection are subject to the underlying qualification that the seller must have been without fault or negligence in bringing about or creating appearances reasonably likely to deceive or mislead an innocent purchaser as to the true ownership of the property. Such fault or negligence on the part of the seller must be sufficient to support the plea of estoppel. And if so, the seller is precluded from asserting his title as against a subsequent purchaser, provided such purchaser can qualify himself as a *bona fide* purchaser for value and without notice of any defect in the title. 46 Am. Jur. 641; 46 Am. Jur. 620; *Ayer v. Mordecai* [10 Rich. 287], 44 S. C. Law, 287; *Carmichael v. Buck* [10 Rich. 332], 44 S. C. Law, 332 [70 Am. Dec. 226]; *Folk v. Sanders,* 36 S. C. 582 [15 S. E. 732]; *Battle v. Columbia N. & L. R. R.,* 70 S. C. 329, 340 [49 S. E. 849]."

The law of neither the State of Tennessee nor that of the State of Virginia having been pleaded, we must assume that it is the same as in this State, and therefore the law of the forum will govern.

We mention one principle prevailing in this State, but not referred to by the trial Judge. Ordinarily, one in possession of personal property is presumed to be the owner, and one purchasing such personal prop-

erty is required to use only reasonable diligence to ascertain if there are any defects in the title thereto.

The two issues or questions raised by the appellant are so interrelated that it is proper to discuss them together.

Respondent purchased the automobile in dispute under the fortuitous circumstances hereinabove related, and not necessary to repeat.

It is the position of the appellant that there are six reasons why the respondent cannot bring himself within the role of an innocent purchaser for value without notice. First, the respondent purchased the car from a complete stranger, a man he had never seen two hours prior to the sale and purchase. Second, the respondent purchased the car not only from a stranger to him, but from a person who was a stranger in the community where the sale was effected. Third, the respondent purchased the car under circumstances which were a wide departure from the ordinary course of a mercantile transaction. Fourth, the respondent paid only $1,350.00 for a car which he knew had sold five days previously for $3,595.00. Fifth, that the Motor Vehicle Purchase Contract shows on its face that the purchase price had been paid by check. Sixth, that the Motor Vehicle Purchase price shows on its face that there had been attempted change of purchase price from $3,595.00 to a lesser amount, $3,195.00.

It is sufficient to say that all of the above matters made one of the issues which was properly submitted to the jury, that is, to determine if the respondent was in fact an innocent purchaser without notice of defects in the seller's title to the property involved. It appears to be conceded that respondent paid $1,350.00 cash for the wrecked automobile, and spent a considerable amount in repairing it, in addition to his labor. However, since this appeal is also from the refusal of the trial Judge to grant appellant's motion for judgment notwithstanding the verdict of the jury, we will briefly refer to these six positions of the appellant.

The first three are wholly without merit when viewed in the light of the circumstances which prevailed at the time the respondent purchased the car, and require no discussion. The fourth can be answered by the simple statement of the undisputed fact that this new car was purchased after it had been badly wrecked, and when others who saw its condition and who were qualified to express an opinion of its then value, testified that the respondent paid more than it was worth. The respondent had a right to assume that the appellant had made proper inquiry about the check before delivering the automobile, especially when both the seller and the apparent purchaser were residents of the same State, and the entire purchase price had been included in the check. So much for the fifth position. As to the sixth, the Motor Vehicle Purchase Contract, assigned and transferred by Hinson under the name of Saltzman, does show an alteration in the amount paid for the car from $3,595.00 to $3,195.00, but it must be remembered that the list price of this automobile was $2,-880.00.

We are convinced, as apparently were the jury and trial Judge, that the respondent was an innocent purchaser for value without notice of any defect in the title to this car; and further that the respondent, under all of the circumstances surrounding the transaction whereby he obtained the automobile in dispute, used reasonable diligence to ascertain if there were any defects in the title of the person in the possession thereof. The only thing that the respondent failed to do, was to telephone to appellant at its office in Nashville, Tenn. to learn if the check which it had accepted had been paid, but the respondent had the right to assume that the appellant would not have parted with a valuable automobile when payment in full therefor was made by check, without ascertaining if the check was good.

Even though the respondent is an innocent purchaser for value, without notice of defect in the title to the automobile, this alone, in the circumstances of this case, would not give him ownership as against the appellant. If coupled with this fact, however, the appellant has been at fault or negligent in placing Bernard Hinson in the position to create an appearance reasonably likely to deceive or mislead an innocent purchaser as to the true ownership, then the appellant is estopped from asserting its claim against the respondent. This is no more than giving recognition to the doctrine long followed in this State that if one of two innocent persons must suffer by the fraud of another, the one whose negligence makes the fraud possible must bear the loss. *Folk v. Sanders,* 36 S. C. 582, 15 S. E. 732; *Richland County v. Owens,* 92 S. C. 329, 75 S. E. 549; *Land v. Reese et al.,* 136 S. C. 267, 134 S. E. 252; and *McFaddin et al. v. Bland et al.,* 147 S. C. 27, 144 S. E. 592.

It was therefore an issue to be submitted to the jury if the appellant handled this transaction in such a careless and negligent manner as to place Hinson in the position to create an appearance reasonably likely to deceive and mislead the respondent into the belief that he was the true owner of the automobile in dispute.

The finding of the jury was amply justified. The automobile was delivered to Hinson upon his delivery of a check, the signature on the check being unfamiliar to the appellant. And Hinson was required to sign the name of H. J. Saltzman on the original and duplicate of the Motor Vehicle Purchase Contract at the place designated for the signature of the purchaser, and this was authorized and witnessed by an employee and stockholder of the appellant, and the original given to Hinson. The check was drawn on a bank in Clarksville, Tenn., approximately forty miles from Nashville. H. J. Saltzman and Mrs. E. F. Stacker resided in Clarksville; and yet the appellant which had five telephones in its place of business and whose long

distance tolls amounted to as much as $1,000.00 some months, did not take the trouble to telephone to the Bank or to Mrs. Stacker or to Saltzman and verify the transaction.

We regret that a loss must be suffered by either party litigant, but under the facts and applicable law, we must affirm the judgment of the Court below.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.