THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 The Bank of New
 York, as successor to JP Morgan Chase, N.A., as Trustee on behalf of
 Certificate-holders and the Certificate Insurer of ABF's Mortgage Loan Trust
 2002-1, Mortgage Pass-Through Certificates, Series 2002-1, as
 successor-in-interest to American Business Mortgage Services, Inc., Appellant,
 
 

v.

 
 
 
 Robert Earl
 Salone and Mae B. Randolph, Defendants,
 
 
 Of Whom Mae B.
 Randolph is Respondent.
 
 
 
 
 

Appeal From Orangeburg County
 James C. Williams, Jr., Circuit Court
Judge

Unpublished Opinion No.  2011-UP-219  
 Submitted March 1, 2011  Filed May 17,
2011

AFFIRMED

 
 
 
 Louis H. Lang, of Columbia, for Appellant.
 Zack E. Townsend, of Orangeburg, for
 Respondent.
 
 
 

PER CURIAM: The Bank of New York (hereinafter Bank) appeals the
 decision of the trial court granting respondent Mae B. Randolph's motion for
 voluntary non-suit in regard to Bank's foreclosure action on property held by
 Randolph as joint tenant with her brother, Robert Earl Salone.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
The facts of this case are
 largely undisputed.  In September 1997, Randolph's mother deeded the property
 in question to Randolph and Salone.  On December 31, 2001, Salone borrowed
 $25,000 from Bank's predecessor in interest[2] and executed a note in that amount, securing payment with a purported mortgage
 on the entire property.  However, though Salone signed the mortgage, it is
 acknowledged that Randolph did not execute the mortgage and her signature on
 the document was forged by an unknown person at the closing.  It is equally
 unquestionable that the closing attorney, although directed by the lending
 institution's closing instructions to procure two forms of identification from
 the mortgagors, obtained identification only from Salone.  The attorney
 testified he asked Salone to attain the identification of the other party
 purporting to be Randolph, but the person did not have the identification at
 the time of closing.  The closing attorney admitted he did not follow the
 lending institution's instructions in this regard, and his failure to obtain
 the proper identification allowed the forgery to occur. 
Following institution of this
 action against Salone and Randolph for foreclosure on the property, Randolph
 answered and counterclaimed, denying that she executed the mortgage in
 question, and asserting the lender negligently caused a false document
 purporting to be a first lien mortgage to be placed on record with a forged
 signature as a result of the failure to obtain the proper photo identification
 of the person executing the loan documents.[3] 
 Randolph also asserted the actions of the lender caused a cloud to be placed
 upon title to this property.
Randolph testified she never
 gave her brother permission to mortgage the property, and the first time she
 knew anything about the mortgage was when she received notice of foreclosure
 for failure to repay a mortgage.  Randolph further testified that the
 foreclosure action had caused her to have a bad credit record, and because of
 this bad credit she was unable to obtain a loan, resulting in the repossession
 of her automobile.  She also indicated the bad credit rating had resulted in a
 higher interest rate on her credit card.  At the time of the trial, Bank sought
 a total of $49,531.82 as the amount owing on the loan.  Randolph stated the
 value of the home was only about $45,000.  Randolph testified that if Bank were
 allowed to foreclose on the property, she would not be in a position to outbid
 Bank.
At the close of Bank's case,
 Randolph moved for a directed verdict on Bank's foreclosure cause of action,
 asserting the foreclosure action came about as the result of a "bad"
 mortgage that would not have occurred had it been known that the party
 executing the document was not Randolph.[4]   
 Randolph maintained, because this was a matter in equity, Bank was required to
 come into the court with clean hands, and Bank should not be allowed to profit
 from its own negligence and "mis-doings."  Randolph argued she did
 not obtain any of the money from the loan, yet it affected her one-half
 interest in the entire property, and the foreclosure action had also ruined her
 credit.  Bank countered that it had established the debt, the non-payment, and
 a lien on a one-half interest in the property.  Bank asserted Randolph did not
 attack the mortgage directly in her answer, but simply asserted causes of
 action against Bank, and maintained that Bank had "made out a prima facie
 case for a mortgage foreclosure."  Bank therefore argued the trial judge
 should order the foreclosure of Bank's lien on one-half interest in the
 property.
The trial judge noted
 Randolph was basically asserting Bank's negligence should estop Bank from
 foreclosing on the property.  After consideration of Randolph's motion for
 directed verdict, as well as Bank's motion for directed verdict as to
 Randolph's counterclaims, the trial judge concluded Bank should be denied the
 right to foreclose on the property, citing the equitable maxim that, where one
 of two innocent parties must suffer, the law looks with disfavor upon that
 party who, through due diligence, could have avoided the loss.  In so doing,
 the trial judge noted Randolph was an innocent party who had no way to protect herself
 from losing her half interest in the property because she did not have the
 financial resources to buy out Bank if foreclosure were allowed.  The trial
 judge further concluded, after reviewing case law on the matter, that the
 knowledge of the closing attorney was imputed to the lender and therefore
 knowledge of the closing attorney that closing procedures were not followed as
 far as obtaining proper identification would be imputed to Bank.  Additionally,
 the trial judge stated, by the time the lender received the closing papers, it
 would have known the identification procedure had not been followed, and thus
 it was on notice of this fact.
Upon hearing the trial
 judge's inclined ruling, Bank argued that such a finding would leave Randolph
 in the position of being a co-tenant with Salone, that at any point in time
 Salone could convey his one-half interest in the property to a third party, and
 Randolph would then find herself in the same position as she would if
 foreclosure were ordered and Bank became her co-tenant.  Because a co-tenant
 can file an action for partition for which there is no defense, Bank argued it
 was simply a matter of choosing a co-tenant, and there was no "distinction
 between those co-tenants."  For this reason, Bank argued the equitable
 doctrine cited by the trial judge was inapplicable.  Randolph disagreed with
 Bank's assertion regarding the distinction between co-tenants arguing, without
 the foreclosure, Randolph could file a partition action against Salone without
 having to include Bank as a party, in which case Randolph would be in a better
 position "of taking care of herself and taking care of her
 situation." 
The trial judge acknowledged
 Bank's argument regarding Randolph still being in the position of being a
 co-tenant, but found the difference was that the Bank was looking to obtain
 around $52,000 out of a partition action for the one-half interest, and if Bank
 bid that amount, Randolph would be "out in the cold," but she would
 not have to face that risk if she filed a partition action without the lien of
 Bank.  Thereafter, the trial judge issued his written order granting Randolph's
 motion for voluntary non-suit in regard to Bank's foreclosure action, again
 relying on the equitable maxim that the loss should fall on the party who, with
 due diligence, could have avoided the loss.[5] 
 The trial judge further noted in his written order that he was granting
 Randolph's motion for involuntary non-suit in regard to the mortgage
 foreclosure relief sought by Bank "for the reasons I announced in court. .
 . ." 
Bank filed a Rule 59(e) SCRCP
 motion to alter or amend the judgment, asserting Bank should be allowed to
 enforce its mortgage against Salone's interest in the property, arguing
 Randolph was in no better position by virtue of the court's order because she
 remained a co-tenant of the property with Salone, who could bring an action to
 partition the property at any time.  The trial judge dismissed Bank's 59(e)
 motion in a form order.  This appeal follows.
ISSUE
Whether the trial judge erred
 in denying Bank its foreclosure remedy because there was no dispute that the
 co-tenant to the subject property who signed the mortgage was in default and
 the other co-tenant, who was a party to the action and who did not sign the
 mortgage, failed to plead or prove any defense, either legal or equitable, to
 Bank's foreclosure action.
LAW/ANALYSIS
Bank contends the trial judge
 erred in denying its foreclosure of the subject property because Randolph
 failed to plead or prove any defense to the foreclosure action.  It argues the
 trial judge's reliance on the equitable maxim - that where one of two innocent
 parties must suffer, the law looks with disfavor upon that party who, through
 due diligence, could have avoided the loss - was improper because Randolph's
 one-half undivided interest in the property would remain free and clear of the
 mortgage lien, and therefore Randolph would suffer no loss, as only Salone's
 interest in the property was encumbered by the mortgage and subject to Bank's
 foreclosure remedy.  Bank contends, by disallowing the foreclosure, Randolph
 remained a co-tenant with Salone, and Salone could bring an action for
 partition.  Thus, Randolph was in no better position than being a co-tenant
 with Bank, and the decision only precluded Bank from obtaining its rightful
 foreclosure on Salone's mortgage.  Additionally, Bank contends the trial judge
 "ruled as [he] did without any issue in the case being raised in the
 pleading or proof to the effect that the Bank's mortgage encumbering Salone's
 interest in the property should not be enforced."
Randolph argues that she
 presented evidence that the mortgage was procured through fraud, she was an
 innocent victim of the fraud, the loan would not have been consummated without
 the fraud, and she suffered harm as a result of the fraudulent mortgage. 
 Randolph counters Bank's argument that she would suffer no loss if Bank were
 allowed to foreclose on Salone's interest is without merit because, as noted by
 the trial judge, Randolph would be placed in the untenable position of being
 forced to outbid Bank or purchase Bank's interest, neither of which she had the
 financial resources to do.  Accordingly, she argues the trial judge correctly
 determined she would suffer the greater harm if the foreclosure were allowed.
First, Bank's assertion that
 the trial judge erred in denying its foreclosure remedy because Randolph failed
 to plead any equitable or legal defense is not properly before the court.  At
 no time did Bank argue to the trial judge that the equitable maxim he applied
 to deny the Bank foreclosure was unavailable because Randolph failed to plead
 the matter.[6] 
 Because this matter was not raised to or ruled upon by the trial judge, it is
 not preserved for review.  See S.C. Dep't of Transp. v. First
 Carolina Corp. of S.C., 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007)
 (holding, to be preserved for appellate review, an issue must have been:  (1)
 raised to and ruled upon by the trial court, (2) raised by the appellant, (3)
 raised in a timely manner, and (4) raised to the trial court with sufficient
 specificity); see also  I'On, L.L.C. v. Town of Mt. Pleasant,
 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (stating imposing preservation
 requirements on the appellant is meant to enable the lower court to rule properly
 after it has considered all relevant facts, law, and arguments, and noting that
 the purpose of an appeal is to determine whether the trial court erroneously
 acted or failed to act, and when appellant's contentions are not presented or
 passed upon by the trial court, such contentions will not be considered on
 appeal).  See also Wachovia Bank, N.A. v. Coffey, 389 S.C.
 68, 74 n. 1, 698 S.E.2d 244, 247 n. 1 (Ct. App. 2010) (finding appellant's
 argument on appeal, that respondent was barred from raising affirmative defense
 of unclean hands, was not preserved where master did not address the procedural
 issue when he ruled appellant had unclean hands, and appellant failed to raise
 the matter in a Rule 59(e) motion).  Further, the sole argument contained in Bank's
 brief regarding the lack of pleading by Randolph, other than stated in the
 issue on appeal, is the single sentence that "the Circuit Court ruled as
 it did without any issue in the case being raised in the pleading or
 proof to the effect that the Bank's mortgage encumbering Salone's interest in
 the property should not be enforced."  (emphasis added).  Bank summarily
 argues this point and cites no law to support the proposition that Randolph was
 required to specifically plead this equitable relief.  Therefore, this argument
 can be deemed abandoned.  See First Sav. Bank v. McLean, 314 S.C.
 361, 363, 444 S.E.2d 513, 514 (1994) (noting that when a party fails to cite supporting
 authority or when the argument is simply a conclusory statement, the party is
 deemed to have abandoned the issue on appeal).
In arguing Randolph failed to
 prove any defense to the foreclosure action, Bank asserts that it had a right
 to foreclose on Salone's interest, and the trial judge erred in applying the
 equitable maxim because Randolph would suffer no loss since she would continue
 to hold a one-half undivided interest in the property.  Bank argues the trial
 judge's concern that Bank could outbid Randolph if the foreclosure were allowed
 is misplaced because nothing in the law would preclude Salone from pursuing a
 partition action as co-tenant.
It is true that, by law, Bank
 would hold a lien on Salone's one-half undivided interest in the property.  See 20 Am. Jur. 2d Cotenancy and Joint Ownership §
 102 (2005) ("[A] mortgage  . . . executed by less than all of the
 cotenants and purporting to bind the entire estate is a mere nullity insofar as
 the nonassenting cotenants are concerned, unless they authorized such action or
 thereafter ratified it.  An encumbrance purportedly placed on the whole
 property is valid as to the cotenant who executed it, and will be held good as
 to the part allotted to that cotenant in any subsequent partition."); 6
 S.C. Juris. Cotenancies§ 6 (1991) ("The interest of a
 tenant in common is freely alienable by either inter vivos conveyance, devise,
 or descent and is subject to the claims of creditors."); 6 S.C. Juris. Cotenancies§ 41 (1991) ("[O]ne
 cotenant cannot mortgage the entire common property without the consent of the
 other cotenants.  The effect of a mortgage that purports to convey the entire
 interest and which is executed by fewer than all the cotenants results in a
 lien on the interest of the mortgaging cotenants only.")  However, the
 question is not whether Bank had a legal right to seek foreclosure on Salone's
 one-half interest, but whether the trial judge erred in applying the equitable
 maxim to bar Bank's remedy of foreclosure.  Here, the only basis Bank argued to
 the trial judge as to why the equitable maxim should not apply was that
 Randolph would be in no different position if the Bank were her co-tenant as
 opposed to Salone, who could convey his one-half interest to a third party at
 any time in the future.  The trial judge agreed with Randolph's attorney that
 Randolph would be in a worse position if the foreclosure were allowed, because
 Randolph would be in a better position to hold onto the property if she brought
 a partition action against Salone, as opposed to trying to outbid the Bank with
 its financial resources and motive to recoup a sum of money greater than the
 value of the property.  Right or wrong, Bank did not argue against this finding
 of harm to Randolph by the trial judge.  Further, while Bank acknowledges in its
 brief that the trial judge expressed legitimate concern that Bank would be the
 successful bidder at a foreclosure action, it does not argue against the trial
 judge's determination that this would amount to harm to Randolph, leaving her
 "out in the cold" in regard to the family property.  
Thus, the only argument Bank
 raised below as to why the equitable maxim should not apply was that Randolph
 was in the same position whether her co-tenant was Salone or Bank.  When the
 trial judge disagreed and found Randolph would face more risk in losing the
 family property if he allowed the foreclosure, Bank did not argue against this
 determination to the trial judge.  Further, although Bank acknowledges on
 appeal the trial court was concerned that Bank would be the successful bidder
 at a foreclosure of the property, it does not address on appeal the trial
 judge's finding that Bank's argument before him failed because there was a
 distinction between Bank and Salone as co-tenants, and that Randolph would be
 in a worse position with Bank as a co-tenant.  Because Bank does not challenge
 the trial judge's finding that Randolph would be in a worse position by having
 Bank as her co-tenant, the trial judge's ruling that Randolph would be harmed
 more if Bank were allowed to foreclose is the law of the case.  See Lucas
 v. Rawl Family Ltd. P'ship, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004)
 (finding an unappealed ruling, right or wrong, is the law of the case).
Additionally, we note our
 courts have found it appropriate to bar a bank from seeking foreclosure on a
 mortgage where a party successfully asserts an equitable doctrine to preclude
 the foreclosure.  See Wachovia Bank, N.A. v. Coffey, 389 S.C. 68,
 74-76, 698 S.E.2d 244, 247-48 (Ct. App. 2010) (holding the master properly
 granted Mrs. Coffey's motion for summary judgment in Wachovia's foreclosure
 action based on her assertion that the equitable doctrine of unclean hands
 barred Wachovia from seeking equitable relief where Wachovia's employees
 processed the home equity loan to Mrs. Coffey's husband without the supervision
 of an attorney and therefore committed the unauthorized practice of law). 
 Further, our courts have long followed the equitable doctrine relied upon by
 the trial judge here that where one of two innocent parties must suffer, the
 law looks with disfavor upon that party who, through due diligence, could have
 avoided the loss.  See Myrtle Beach Lumber Co. v. Willoughby, 276
 S.C. 3, 6, 274 S.E.2d 423, 425 (1981) (holding, when one of two innocent
 parties must suffer, the brunt should fall upon the one most responsible for
 the problem which developed); Ex parte Dort, 238 S.C. 506, 511, 121
 S.E.2d 1, 3 (1961) (noting the rule long followed in this State that if one of
 two innocent persons must suffer by the fraud of another, the one whose
 negligence makes the fraud possible must bear the loss); City Lumber Co. v.
 Nat'l Sur. Corp., 229 S.C. 115, 121, 92 S.E.2d 128, 131 (1956) (finding
 applicable to the facts of that case the "well established principle that
 where one of two innocent parties must suffer a loss, it must be borne by that
 one of them, who, by his conduct, has rendered the injury possible"); Russell
 Willis, Inc. v. Page, 213 S.C. 156, 169, 48 S.E.2d 627, 633 (1948) (giving
 recognition to the doctrine long followed in this State that if one of two
 innocent persons must suffer by the fraud of another, the one whose negligence
 makes the fraud possible must bear the loss); Horry County v. Ray, 382
 S.C. 76, 84, 674 S.E.2d 519, 524 (Ct. App. 2009) (noting application of the
 well-recognized equitable principle that "when one of two innocent parties
 must suffer loss, it must fall on the party who, by incautious and misplaced
 confidence, has occasioned it or placed it in the power of a third party to
 perpetrate the fraud by which the loss has happened"); MI Co. v. McLean,
 325 S.C. 616, 624, 482 S.E.2d 597, 601 (Ct. App. 1997) (recognizing application
 of this well settled principle of equity - that where one of two innocent
 parties must suffer loss, it must fall on the party who, by incautious and
 misplaced confidence, has occasioned it or placed it in the power of a third
 party to perpetrate the fraud by which the loss has happened - in the 1884 case
 of City Council of Charleston v. Ryan, 22 S.C. 339 (1884), wherein the
 court held, where the mortgagee endorsed his name in blank on the back of the
 mortgage and a satisfaction was thereafter written above his signature, the
 mortgagee must bear the consequences of the act made possible through his
 negligence, and an innocent subsequent purchaser would be protected); Guardian
 Fid. Corp. v. First South Sav. Bank, 297 S.C. 63, 68, 374 S.E.2d 690, 692
 (Ct. App. 1988) (applying the equitable maxim that, where one of two innocent
 parties must suffer, the law looks with disfavor upon that party who, through
 due diligence, could have avoided the loss).
In the case at hand, it is
 undisputed that Randolph was a completely innocent party who found herself
 ensnarled in a mortgage foreclosure action through no fault of her own, but due
 to a forgery committed as a result of the Bank's failure to use due diligence
 in ensuring the party signing the mortgage documents was, in fact, Randolph.  Further,
 the trial judge's ruling that Randolph would be harmed more if Bank were
 allowed to foreclose is the law of the case.
CONCLUSION
For the foregoing reasons,
 the order of the trial judge is
AFFIRMED.
HUFF, SHORT, and PIEPER,
 JJ., concur.         

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] Bank of New York acquired the note and mortgage from
 American Business Mortgage Services, Inc. following that company's filing of
 bankruptcy.
[3] It appears that Salone failed to answer or otherwise
 respond to the action. 
[4] In making this argument, Randolph asserted Bank
 admitted it would not have closed the loan had it known the person signing the
 mortgage was not Randolph.  Bank did not contest this assertion.  
[5] The trial judge also granted Bank's motion for
 directed verdict on Randolph's counterclaims, but Randolph did not appeal this
 ruling.
[6] Bank seems to take the position that its assertion
 before the trial judge that Randolph did not attack the mortgage directly in
 her answer, but simply asserted counterclaims, was sufficient to raise the
 issue.  However, Bank clearly never asserted that Randolph was prohibited from
 raising the estoppel argument because she failed to plead the equitable
 defense.  See S.C. Dep't of Transp. 372 S C. 295, 302-03, 641
 S.E.2d 903, 907 (2007) (noting that a party need not use the exact name of a
 legal doctrine in order to preserve an argument, but it must be clear that the
 argument has been presented on that ground).